# Richmond.

## Norfolk and Western Railway Co. v. Mann.

### January 31, 1901.

1. MASTER AND SERVANT—*Personal Injury—Unnecessary Exposure to Danger.*—A servant who is injured in consequence of voluntarily attempting to do a harmless act at an obviously dangerous place, when he could have readily waited until he reached a place of safety, cannot recover therefor of the master.

2. APPEAL AND ERROR—*Error Invited by Party Complaining.*—A judgment will not be reversed for an error introduced into the record or invited by the party asking the reversal.

3. NEGLIGENCE—*Instructions—Partial View of Evidence.*—In an action to recover damages for a personal injury, it is not sufficient for the plaintiff to show that he was without fault, but he must also show that the defendant has been guilty of some fault or negligence, which was the proximate cause of the injury; and, where the defence is the want of negligence on the part of the defendant, and also the contributory negligence of the plaintiff, an instruction which leaves out of view entirely the defendant's lack of negligence is erroneous.

4. INSTRUCTIONS—*Inconsistency.*—Generally, where inconsistent instructions have been given, the verdict should be set aside, and this is especially true where one of them, which undertakes to cover the whole case, and to state all the circumstances and conditions necessary to be considered by the jury in arriving at a verdict, leaves out of consideration an essential view of the case.

5. INSTRUCTIONS—*Conflict of Evidence—Harmless Error.*—Where the evidence is conflicting, it is impossible to say that an erroneous instruction has done no harm, and that no other verdict could have been found than was found.

Error to a judgment of the Circuit Court of Prince Edward county, rendered September 5, 1899, in an action of trespass on

the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.   Verdict for $5,000.

*Reversed.*

The opinion states the case.

*W. H. Mann* and *F. S. Kirkpatrick,* for the plaintiff in error.

*Lee & Howard,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The defendant in error recovered a judgment against the Norfolk and Western Railway Company, which is before us upon a writ of error.

The facts as they appear from the record, so far as we deem it necessary to state them, in order to dispose of this case, are as follows:

Ollie E. Mann was, on the 29th of April, 1899, when the occurrences took place which constitute the subject of this suit, a conductor on one of the freight trains of the Norfolk and Western Railway Company. He had been in the employment of the company for about five years, and was twenty-six years of age. On the morning of April 29th, he left Crewe, a station on the Norfolk and Western railway, in charge of a train composed of fifty-five empty coal bunkers, an engine, and caboose. No stop was made until the train reached Farmville, where they found a local freight train ahead of them. When Mann's train stopped at Farmville, the rear of it rested on a bridge between two and three hundred yards to the east of the station. The flagman, as was his duty upon the stoppage of the train, got down, and went back to protect the train. Mann, the conductor, left his cab, and started in the direction of the engine, " inspecting the train, looking over the cars, as it was my duty to do, and went on and looked over several, and when I got on

the bridge I found that one of those cars with the air was leaking pretty rapid, leaking out of the cross-over pipe, the pipe that runs from the main train pipe to the auxiliary reservoir—the air was escaping, which made it necessary to get the air from the reservoir, and I turned the stop-cock and cut the air out of the reservoir, and when you do that it is necessary to bleed the reservoir to keep the brakes from sticking on the car. After cutting it out, I walked on the side of the bridge forty or fifty feet from the west end of the bridge. I saw the engineer and brakeman looking over the train, and when I did that I walked around to bleed the reservoir and caught hold of this rod, which extends through the side of the car and connects with the release valve. The rod is the same size as that (pointing to model), with the exception that it is longer. I got hold of that to bleed the reservoir, to let the air off, when that rod came loose and threw me right backwards—not exactly backwards, but sideways, and all went down together. It knocked me senseless at the time, and I was unconscious about six or seven hours."

By the rules of the Norfolk and Western Railway Company, "conductors must know that the cars in their train have been inspected, and that the brakes, heating apparatus and air signals are in proper working order. Any omission on the part of the inspectors must be regarded as a danger to the train, and at once be reported to the superintendent."

It further appears that it is the duty of a conductor to report at the station thirty minutes before the leaving time of the train, which it seems Mann did upon this occasion, to take the number of all the cars and go to the yardmaster's office and check up with the yard clerk, and get orders and leave, and to sketch over the train, and to see that all cars were coupled together and in practical running order, and he says all these duties were performed on the morning in question, and thus all of the thirty minutes were consumed.

It might fairly be contended before the jury from Mann's own testimony that it was his duty to inspect the train and the mechanism in connection therewith, the unsafe condition of which it is claimed caused the accident and injury now under investigation. Mann, it is true, insists that this was the business of the car inspector, but, as we have already said, it might have been fairly argued from Mann's own testimony, and certainly from the testimony of other witnesses, that this was a duty imposed upon him also. There is evidence to show that the place at which Mann undertook "to bleed the reservoir" was one of obvious peril, and that there was no such emergency as required or excused his undertaking to do it at that particular time and place; and, in this connection, plaintiff in error not only relies upon the statement of witnesses, but upon the uncontrovertible fact that the train did move from its position upon the bridge without "bleeding the reservoir," or doing anything whatever to the air brake apparatus, or any part of its mechanism. There is evidence tending to show that the whole train and all its parts was inspected before leaving Crewe, and that the defect in the air-brake apparatus was either developed between Crewe and Farmville, or that if it existed when the train was inspected at Crewe, it was not obvious to a reasonable inspection, and that the injury to Mann was the result of unavoidable accident, occurring without negligence upon the part of the railroad company

And it was further contended on behalf of the defendant company that Mann contributed to his own injury by undertaking to correct the trouble with respect to the air-brake apparatus at a place where the danger of performing the duty was obvious and imminent, when there was no urgent occasion for it being then and there performed, and that he did it in a careless and negligent manner.

In this condition of the evidence certain instructions were

asked, some of which were given and others refused, but we shall direct our attention only to the following:

First, the court was asked to say to the jury, "that if they shall believe from the evidence in this case, that Conductor Mann was in charge of train No. extra 195 on the 29th day of April, that it was unnecessary for him to bleed the reservoir of car No. 9,202 while standing on the bridge at Farmville, and that if he could have waited until the bridge was crossed by said car, and then have bled it in safety, he is not entitled to recover in this case, and they must find for the defendant."

That instruction, we think, should have been given. It states the law plainly and concisely, and there is evidence tending to prove the facts upon which it is based.

The only other instruction to which we shall refer is that numbered 13 in the record, which was prepared by the court in lieu of certain instructions asked of it by the plaintiff in error, and which had been declined. To Instruction No. 13 as prepared by the court the defendant objected, and on its motion the instruction was changed by the court, and given as follows:

" That if the jury shall believe from the evidence in this case that Conductor Mann was in charge of Train No. extra 195, on the 29th day of April, 1899; that said train was stopped at or near Farmville, leaving a portion of said train standing upon the bridge over the Appomattox river, in consequence of the fact that another train was standing on the track immediately in front of said train; that car No. 9,202, being a part of said train, was left standing upon said bridge, and whilst said train and car were in that position Conductor Mann was informed by the engineer, through one of his trainmen, that there was a leakage in the air pipe somewhere, which affected the working of the air pump, and that this matter needed his attention, and, in consequence of such information, he went upon the bridge and found that the defect was in the cross-over pipe leading from the main pipe to the auxiliary reservoir of said car No. 9,202, that there

was a release rod extending from the valve upon said reservoir through the bottom of said car and protruding from the side of said car, as is usual in such cases, the use of which rod was to bleed said auxiliary reservoir by pulling or pushing the same, when necessary or proper to do so; that the end of said rod protruding from the side was about twenty inches from the end of said car, and that there was a hand-hold and step within easy reach of the handle of the release wire; that between said car and the outside ends of the ties on the bridge there was a space of about two feet without any railing or protection whatever, and if they further believe that in this condition of affairs said Conductor Mann, after said car had been cut out from connection with the main air pipe, attempted to bleed said auxiliary reservoir by catching hold of the end of said release rod and pulling it in the usual and proper manner but did not take hold of the step or hand-hold, and that said release rod gave way and came out, in consequence thereof said Mann fell off said bridge and sustained the injuries complained of, then they, the jury, must determine whether, under all the circumstances of this case, Conductor Mann was acting in the proper discharge of his duties as a conductor, or had just reason to believe that he was so acting, and whether in so acting he took such reasonable and proper precautions against injury to himself as a reasonable and prudent man should have done under like circumstances, and if they believe this, then they must find for the plaintiff, but if they believe that said Conductor Mann needlessly put himself in a dangerous position in the performance of said act, then they must find for the defendant."

Before entering upon an examination of this instruction, it is proper to state that defendant in error contends that even though it be erroneous, the case should not be reversed, because of it, for he claims it was given at the request of the plaintiff in error. In other words, that the court having prepared an instruction to

which plaintiff in error objected, the court thereupon expurgated the objectionable matter, and then gave the instruction to the jury. If it were so, then the position of defendant in error would be plainly right, for plaintiff in error could not ask a reversal of a judgment for error in the record introduced or invited by it. But such is not the case, for, notwithstanding the amendment to the instruction made by the court at the instance of plaintiff in error, the record shows that it excepted to the action of the court in refusing the instruction offered by it in lieu of instruction No. 13 as finally prepared by the court and given, and to the action of the court tendered its third bill of exceptions, which was signed, and made a part of the record.

That instruction was doubtless designed by the court to deal only with the question of contributory negligence, but lying at the threshold of every action of this kind is the duty imposed upon him who seeks to recover for injury by the negligence of another to prove such negligence as the proximate cause of the injury done. It is not enough to show that the plaintiff was without fault. It is essential to his recovery to show some fault or act of negligence in the defendant. This view of the case is wholly omitted from the instruction in question. It undertakes to state all that it was necessary for the defendant in error to establish to entitle him to a verdict of the jury; and if the law, as applied to the facts governing this case, be correctly stated in Instruction No. 13, then it is manifest that the jury were authorized to bring in a verdict against the defendant, in the absence of any proof of any act of negligence on its part. Now, there was, as we have seen, evidence tending to show that the railroad company was not negligent, but that the accident was unavoidable. That was the contention of the plaintiff in error. It rested its defence, first, upon the plea that it was not guilty of any negligence upon its part; secondly, that the contributory negligence of the plaintiff was an efficient cause of any injury which he suffered by reason of that negligence. The instruction

leaves out of view the primary contention of the defendant and fastens upon it responsibility to the plaintiff.

It is true that there are other instructions given by the court which tell the jury that they must be satisfied that the injury was the result of the defendant's negligence, and we have then inconsistent instructions. Not only inconsistent instructions, but an instruction which, undertaking to cover the whole case, and to state all the circumstances and conditions necessary to be considered by the jury in arriving at a verdict, leaves out of view an essential view of the case.

As was said by Judge Buchanan in *Va. & N. C. Wheel Co.* v. *Chalkley,* 98 Va. 62, dealing with inconsistent instructions: " The fact that another instruction may have correctly stated the law upon the subject does not cure the error. Where two instructions are inconsistent with or contradict each other it is impossible to say whether the jury was controlled by the one or the other. Neither can the contention be sustained that the error under consideration should be disregarded because upon the whole case it is clear that no other verdict could properly have been found. The evidence is conflicting, and this court cannot say that the plaintiff in error was not prejudiced by the erroneous instruction. *Richmond Traction Co.* v. *Hildebrand,* 98 Va. 22."

The law as thus stated applies with full force to the case under consideration. The error is presumed to be prejudicial, and it is impossible for us upon the evidence to say that it did not influence the verdict of the jury.

We do not deem it proper to express any opinion as to the weight of the evidence. We have only to deal with the tendency of the proof.

For the reasons given, we are of opinion that the judgment complained of should be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had in accordance with the views herein expressed.

*Reversed.*