# Richmond.

## NELLIE R. GREEN *v*. PEARL RUFFIN.

### December 18, 1924.

### (Reheard February 26, 1925.)

1. STREETS AND HIGHWAYS—*Pedestrians—Crossing Street in Middle of Block—Care Required.*—A pedestrian has a right to cross a street between crossings. If he elects to do so, rather than go to the regular crossings, he will be required to use greater care for his own safety than when he crosses at the place provided for pedestrians, as vehicles have the right of way, except at intersecting streets. The rule by which to determine whether one crossing a street between crossings has exercised the greater care required in such case is the rule of ordinary care; that is to say, has he used the care which an ordinarily prudent person would use in the same place and under the same conditions.

2. STREETS AND HIGHWAYS—*Right of Way Ordinance—Crossing in Middle of Block—Construction.*—A city ordinance provided that vehicles shall have the right of way over pedestrians between intersections of street with other streets. These right of way ordinances must be construed reasonably and according to their intent, which is to prevent the movement of traffic from being obstructed, so that when a pedestrian and vehicle approach, at the same time, the same point, the former crossing the street and the latter going forward, the ordinance requires the pedestrian to stop and give the right of way instead of stopping the vehicle. They have equal rights in the use of the street, and the pedestrian's right only yields to the vehicle when the necessity arises.

3. STREETS AND HIGHWAYS—*Crossing in Middle of Block—Ordinary Care for Jury.*—Where plaintiff was run over by defendant's automobile while attempting to cross the street in the middle of a block, the question of whether she used the care which an ordinarily prudent person would use in the same place and under the same circumstances was for the jury.

4. STREETS AND HIGHWAYS—*Pedestrians Crossing Street—Duty to Look and Listen.*—The rule to look and listen which applies to pedestrians and street cars and railroads from the character of their occupancy of the street or crossings, their speed, and facility to avoid collisions, does not apply with the same strictness in law to pedestrians and automobiles.

5. STREETS AND HIGHWAYS—*Pedestrians Crossing Street—Looking—Case at Bar.*—Plaintiff was attempting to cross a street when struck by defendant's automobile; when plaintiff was about fifteen or sixteen feet from the curb she was approaching she looked in the direction from which vehicles might be expected and saw defendant's car about one hundred and twenty feet away, and thinking she could cross safely continued her way and was struck as she was about to step on the sidewalk.

   *Held:* That whether the plaintiff, after glancing up and seeing the defendant's car, in continuing her journey without the further exercise of her senses, was using such care as an ordinarily prudent person would use under the same circumstances, was a question of fact for the jury.

6. STREETS AND HIGHWAYS—*Pedestrian Crossing Street—Mathematical Calculation—Case at Bar.*—In the instant case, an action for injuries caused by defendant's car striking plaintiff while she was attempting to cross the street, defendant's counsel in their brief had gone into a mathematical calculation to show that a collision was inevitable if the distances which separated the defendant and the plaintiff and the rate of speed each was going in their respective directions were as testified to by the plaintiff and her witnesses.

   *Held:* That it is not the duty of pedestrians to make mathematical calculations before crossing streets in front of automobiles, but to exercise ordinary care for their safety.

7. APPEAL AND ERROR—*Pleadings—Evidence.*—Matter urged by counsel in reply, but of which there was no allegation in the pleadings or evidence to establish, cannot be considered on appeal.

8. STREETS AND HIGHWAYS—*Pedestrians—Duty of Driver of Automobile—Question for Jury.*—It is the duty of the driver of an automobile to keep a lookout for and to exercise reasonable care not to injure pedestrians using the street with reasonable care, and whether or not such care has been exercised is for the jury.

9. NEW TRIAL—*Parties Entitled to Only One Fair Trial—Section 6331, Code of 1919—Case at Bar.*—In the instant case, which arose out of an automobile accident, the only controverted fact was whether defendant was keeping a proper lookout. Upon this question the evidence was conflicting and the jury apparently found in favor of the plaintiff.

   *Held:* Upon these facts, by virtue of section 6331, Virginia Code 1919, and its purpose to give litigants only one fair trial, the court was right in overruling the defendant's motion for a new trial, unless the defendant's case was prejudiced by the instructions.

10. INSTRUCTIONS—*What should be given Dependent upon the Evidence.*—What instructions should be given for the guidance of the jury and their nature depends upon the evidence in the particular case.

11. INSTRUCTIONS—*Numerous Instructions Tend to Mislead.*—The giving of

twenty instructions where the facts were simple and three or four would have been ample could only have confused and misled the jury.

12. APPEAL AND ERROR—*Error in Instructions—Two Theories, Error as to Either—Case at Bar.*—In the instant case the jury had before it under the instructions two theories, under either of which it might have found for the plaintiff, viz.: That the plaintiff was not guilty of contributory negligence or if guilty of contributory negligence defendant had a last clear chance to save her.

*Held:* That since the appellate court could not say which of these theories was accepted by the jury, an error with respect to either would have to be regarded as prejudicial.

13. APPEAL AND ERROR—*Contradictory Instructions.*—Where two instructions are inconsistent with or contradict each other, it is impossible to say whether the jury were controlled by the one or the other.

14. APPEAL AND ERROR—*Instruction as to Last Clear Chance not Applicable under the Evidence—Case at Bar.*—In the instant case, an action growing out of an automobile accident, there were only two theories propounded by the evidence: (1) That the plaintiff was not negligent after looking and deciding that she could safely cross the street without injury; and (2) that the injury was the result of an unavoidable accident. The court instructed the jury upon these respective theories of the plaintiff and defendant, but the plaintiff, without further evidence tending to prove facts which would make an instruction upon the doctrine of the last clear chance applicable, had that issue injected into the case, by an instruction on the doctrine given at his request.

*Held:* Prejudicial error, as the doctrine had no application to the evidence in the case.

15. LAST CLEAR CHANCE—*Duty of Self-Preservation—Plaintiff's Negligence.*—A person may be rightfully upon a railroad track or street where trains and automobiles are constantly passing; therefore his position does not make him guilty of negligence. He is guilty of negligence only when he fails to do such things as reason and instinct of self-preservation suggest for his own protection from injury, and this duty of self-preservation imposed by law and common prudence continues as long as the possibility of his saving himself exists.

16. LAST CLEAR CHANCE—*Duty of Self-Preservation—Concurring Negligence.*—The operator of the train (or the automobile) has the right to presume that the person will protect himself, and until it appears that he cannot or will not exercise his powers to protect himself, the operator is free from negligence. There must be evidence of some kind to show that the plaintiff cannot or will not exercise care for his own safety, and there must be sufficient time and opportunity after the discovery, or duty to discover, the plaintiff's danger from

his own negligence, for the operator to save him. If only a step or two from the track to safety is necessary, or stopping before going on the track (or in the path of an automobile), which takes only a second of time to do, the parties at best would be guilty of concurring or simultaneous negligence and there could be no recovery.

17. LAST CLEAR CHANCE—*When Instruction Justified.*—There must be evidence, or circumstances surrounding the injury, of probative value to justify a court in instructing upon the doctrine of the last clear chance.

18. APPEAL AND ERROR—*Assignment of Error—Error not Assigned Considered under Section 6331, Code of 1919.*—While error in the giving of an instruction on the last clear chance doctrine was not assigned in terms in the petition or brief of counsel, yet it was the duty of the appellate court under section 6331, Virginia Code 1919, in order to vitalize said section, to consider the entire record of the law and the evidence, and, if the parties have had one fair trial on the merits, affirm the judgment, if not remand the same for a new trial.

19. APPEAL AND ERROR—*Error in Instructions—No Other Verdict Possible.*—While it is the rule that error in the instructions is harmless if the court is satisfied that no other verdict was possible upon the law and the evidence, yet this rule has no application in a case where the evidence is so conflicting that if the verdict had been for the other party it could not have been disturbed.

20. LAST CLEAR CHANCE—*Applicable both to Plaintiff and Defendant.*—The doctrine of last clear chance is a duty imposed by law on both the plaintiff and defendant. If, being in plain view of each other, and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery.

21. LAST CLEAR CHANCE—*Duty of Plaintiff—Automobile Striking Pedestrian—Case at Bar.*—Plaintiff, in attempting to cross the street, was struck by defendant's car. When within fifteen or sixteen feet of the curb plaintiff looked in the direction from which cars might be expected and saw defendant's automobile approaching about one hundred and twenty feet away. Plaintiff then proceeded towards the curb without looking again and was struck as she had practically reached it.

   *Held:* That assuming that the plaintiff was negligent, it was her duty, with the automobile in plain view coming toward her, to have looked and stopped when such act would have been effective. She had the same last clear chance to protect herself as the defendant had to protect her.

22. LAST CLEAR CHANCE—*Foundation of Doctrine—Discovery of Peril.*—The foundation of the doctrine is that the parties are guilty of concurring negligence, and there must be some condition, circumstance, or superadded fact which one of the parties saw, or by the exercise

of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party, and the obligation of discovering the last clear chance is mutual.

23. LAST CLEAR CHANCE—*Burden of Proof.*—One relying on the doctrine of the last clear chance has the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care after his peril was discovered there was in fact a last clear chance to save him.

24. LAST CLEAR CHANCE—*Duty of Prevision.*—Seeing a person in the apparent possession of all his faculties with back turned to an approaching vehicle, or with head bowed or turned away, approaching the track of the vehicle, with no superadded circumstances, or evidence of unconsciousness of peril, does not impose upon the operator of the vehicle the duty of prevision; he has the right to assume that a normal person in a situation requiring the exercise of prudence will use his faculties in time to prevent his injury. That is the course of human experience.

25. LAST CLEAR CHANCE—*Duty of Prevision—Case at Bar.*—In the instant case if defendant, while driving her automobile, had looked ahead when within one hundred and twenty feet of the place of the accident she would have seen plaintiff apparently in full possession of her faculties in no danger at that time crossing the street. Should they meet it was the pedestrian's duty to stop and yield the right of way. Up to this point neither party could be said to be negligent. When they both arrived at a point on the street where they were about to meet, the plaintiff could certainly not have been more than a step or two from the track of the automobile, and the driver still had the right to assume that plaintiff would stop and let her pass. Here it was the duty of plaintiff to look, and, if she had looked, she would have seen that the automobile would not check up.

UPON A PETITION TO REHEAR.

February 26, 1925.

26. APPEAL AND ERROR—*Invited Error—Amendment—Case at Bar.*—The doctrine of invited error is recognized in Virginia, but it does not apply where a defendant is compelled to ask for an amendment to an instruction to be given for plaintiff, or ask for a counter instruction contending that it more correctly states the law. Thus, in the instant case, there was no merit in the contention that the error of the trial court in allowing the plaintiff's case to go to the jury upon the doctrine of last clear chance was invited by the defendant, because the defendant also asked for an instruction upon this theory of the case.

27. APPEAL AND ERROR—*New Trial—Designating Questions or Points upon which the New Trial is to be had—Case at Bar.*—Section 6365 of the

Code of 1919 provides that a case shall not be remanded for a trial *de novo* except where the ends of justice require it, but the appellate court shall, in the order remanding the case, if it be remanded, designate upon what questions or points a new trial is to be had. In the instant case it was contended that the appellate court should direct that the amount of damages be not again submitted to the jury on the further trial of the case, but that the issue be confined to a finding upon the question of liability of the defendant. But the court, upon consideration of the entire record, was of the opinion that the ends of justice did not require that the court should do otherwise than remand the case generally for a trial *de novo*.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Eugene Withers, Jno. W. Carter, Jr., W. H. Venable,* and *William Leigh Williams,* for the plaintiff in error.

*Whitehead & Hurt* and *Aiken & Benton,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

On the 11th day of November, 1921, Mrs. Pearl Ruffin and her sister, Mrs. Slade, who had been attending Armistice Day memorial services at the Methodist church on Main street, in Danville, were going home on the southern or left hand side of Main street. At the point of the accident the street is forty-six feet wide between curbs and has a double line of street car tracks in the middle of the street, and from the north rail to the north curb of the street is fifteen feet nine inches. Mrs. Ruffin lives on the north side of Main street and

when she arrived at a point on the south side of the street almost opposite her residence she looked and saw no automobiles on the south side of Main street and started across the street to her residence, walking rather briskly. When she reached the northern rail of the street car track she checked her gait in order to let Mrs. Booth's car pass her, and after it passed she glanced down the street in the direction from which automobiles came on that side of the street and saw a car about the alley between the Penn and Graveley residences, approximately one hundred and twenty feet away, approaching. This car proved to be Mrs. Green's who was driving west to her home with Mrs. Beverly Ruffin on the back seat. The occupants of the car had been to similar services at the Episcopal church at the corner of Main and Jefferson streets. Mrs. Green's car was parked on Jefferson street, from thence she crossed Main street to the right hand side and turned west. Mrs. Booth's car was behind Mrs. Green's but passed her, before Mrs. Pearl Ruffin said she saw the Green car about the alley between the Graveley and Penn residences.

The plaintiff did not look again in the direction from which the Green car was coming and when she had practically reached the sidewalk, but before she had stepped upon it, she was struck by the car and knocked down and seriously injured. At the time of the collision Mrs. Green remarked to her companion, "I fear I have hit someone," stopped her car; both ladies went back and found the plaintiff on the sidewalk. Subsequently at the hospital Mrs. Green stated that she did not see the plaintiff.

Mrs. Green on the trial testified that the plaintiff stepped from behind the Booth car in front of her car, and she did not see her until too late to avoid the accident.

The court gave eleven instructions asked for by the plaintiff and nine instructions for the defendant, and the jury having heard the argument of counsel were sent out of court to consult of their verdict and after some time returned and upon their oath do say: "We, the jury, find for the plaintiff and assess her damages at ten thousand ($10,000.00) dollars."

"Whereupon the said defendant moved the court to set aside the verdict rendered in this cause against her and grant her a new trial on the grounds that the same is contrary to the law and the evidence and without evidence to support it, and further moved the court to enter up final judgment for the defendant herein, and the court takes time to consider thereof."

"And at another day, to-wit, the 14th day of October, 1922, the defendant by her attorneys moved the court to set aside the verdict rendered against her and grant her a new trial, on the additional ground that the same is excessive, and the court takes time to consider thereof."

"And, now, at this day, to-wit, on the 24th day of October, 1922, the court having maturely considered the defendant's motion to set aside the verdict, overruled the same," and entered up judgment against the defendant in favor of the plaintiff for the full amount of the verdict. To which action of the court the defendant excepted, and brought the case before this court for review by writ of error.

Beside the exception to the action of the court overruling her motion to set aside the verdict of the jury and grant a new trial and enter up judgment for the defendant, exceptions were taken to each and all of the instructions given upon request of the plaintiff as well as amendments made by the court to the instructions asked by the defendant, so that it is impracticable to

consider them in detail. The parties will be denominated plaintiff and defendant in this opinion as they were in the trial court.

The first error for consideration is the usual one in all negligence cases, whether the defendant was guilty of negligence, which was the proximate cause of the plaintiff's injuries, and, if so, was the plaintiff guilty of contributory negligence which would bar her recovery? This goes to the very merits of the case, and will have to be considered from the standpoint of whether there was any evidence to sustain the verdict of the jury, or whether the facts found by the jury are supported by evidence.

The physical facts and circumstances attendant upon the injury and its cause are in the main uncontroverted, so that in the discussion of this branch of the case only the evidence to sustain the gravamen of the accident will be noticed, except where there is a sharp conflict between the plaintiff and defendant as to the surroundings.

[1] When the plaintiff and her sister, Mrs. Slade, reached a point on the south side of Main street opposite the home of the plaintiff, and between the intersections of cross streets, she determined to cross directly to her home on the north side of Main street. While the evidence proves that the street is very much used at this point, the defendant's counsel strenuously urged upon the court the fact that the street was very much congested and crossing there was extremely dangerous. The evidence shows no street cars near the point where she crossed, and only three automobiles, Mrs. Prichett's car which crossed to the south side of the street, Mrs. Booth's car and that of the defendant. It appears in the evidence that the plaintiff only saw two of the cars, to-wit: Mrs. Booth's and Mrs. Green's.

The law which was the rule of the plaintiff's duty in crossing the street where she did is correctly laid down in instruction C, given for the plaintiff, as follows:

"The court instructs the jury that a pedestrian has a right to cross a street between crossings, if he elects to do so, rather than go to the regular crossings; he will be required to use greater care for his own safety than when he crosses at the place provided for pedestrians, as vehicles have the right of way, except at intersecting streets. But the court further instructs the jury that the rule by which to determine whether one crossing a street between crossings has exercised the greater care required **in** such case is the **r**ule of ordinary care, that is to say, has he used the care which an ordinarily prudent person would use in the same place and under the same conditions." *Core* v. *Wilhelm,* 124 Va. 150, 98 S. E. 27; *Washington & O. D. Ry.* v. *Zell's Adm'r,* 118 Va. 759, 88 S. E. 309; *Harker* v. *Gruhl,* 62 Ind. App. 177, 111 N. E. 457; *Schneider* v. *Locomobile Company,* 83 Mis. Rep. 3, 144 N. Y. Supp. 311.

[2] An ordinance of the city of Danville provides that vehicles shall have the right of way over pedestrians between intersections of street with other streets. These right of way ordinances must be construed reasonably and according to their intent, which is to prevent the movement of traffic from being obstructed, so that when a pedestrian and vehicle approach, at the same time the same point, the former crossing the street and the latter going forward, the ordinance requires the pedestrian to stop and give the right of way instead of stopping the vehicle. They have equal rights in the use of the street, and the pedestrian's right only yields to the vehicle when the necessity arises. *Virginia Ry. & Power Co.* v. *Wellons,* 133 Va. 350, 112 S. E.

845; *Virginia Ry. & Power Co.* v. *Slack Grocery Co.,*
126 Va. 691, 101 S. E. 878.

[3] The plaintiff having the right to cross the street
to her home where she did, the next subject of in-
quiry is as to her duty as to the care she should exercise.
That is to say, has she used the care which an ordinarily
prudent person would use in the same place and under
the same circumstances? This is a question for the
jury. *Core* v. *Wilhelm, supra; Virginia Ry. & Power
Co.* v. *Wellons, supra;. Virginia Ry. & Power Co.* v.
*Oliver,* 133 Va. 342, 112 S. E. 841.

[4, 5] The plaintiff testified that when she reached the
north rail of the street car track she stopped in order
to let Mrs. Booth's car pass and spoke to Mrs. Booth.
When this car passed she *glanced* in the direction from
which cars traveled on that side of the street and saw
no other car except that of the defendant about one
hundred and twenty feet away, at the alleyway be-
tween the Graveley and Penn residences, and thinking
she could cross to safety before the car reached her,
she resumed her journey without looking again, and
when she was practically about to step upon the side-
walk, she was struck by the car, knocked unconscious,
and injured as detailed by her and the physicians who
attended her. Mrs. Slade corroborated her as far as
she could. It was clearly the duty of the plaintiff to
look in the direction from which cars were coming be-
fore leaving her place of safety, the rule to look and
listen which applies to pedestrians and street cars and
railroads from the character of their occupancy of the
street or crossings, their speed and facility to avoid
collisions, does not apply with the same strictness in
law to pedestrians and automobiles. Whether the
plaintiff, after glancing up the street and seeing the
defendant's car, was justified in continuing her journey

without the further exercise of her senses, was using such care as an ordinarily prudent person would use under the same circumstances, was a question of fact for the jury. *Core* v. *Wilhelm, supra; Virginia Ry. & Power Co.* v. *Slack Grocery Co., supra; Virginia Ry. & Power Co.* v. *Oliver, supra; Knapp* v. *Barrett,* 216 N. Y. 226, 110 N. E. 428; *Rolfs* v. *Mullens,* 179 Iowa 1223, 162 N. W. 783.

[6] The defendant's counsel in their brief have gone into a mathematical calculation to show that a collision was inevitable if the distances which separated the plaintiff and defendant and the rate of speed each was going in their respective directions were as testified to by the plaintiff and her witnesses. It is not the duty of pedestrians to make mathematical calculations before crossing streets in front of automobiles, but to exercise ordinary care for their safety. *Virginia Ry. & Power Co.* v. *Wellons, supra.*

[7] The plaintiff's counsel have urged in their reply brief that the plaintiff was upon the sidewalk and that the fender of the defendant's car negligently protruded over the sidewalk and struck the plaintiff in the side after she had reached a place of safety. There is no allegation of such negligence, nor any evidence or inference from the evidence in the case to establish such fact or sustain such finding by the jury.

[8, 9] The defendant testified that the plaintiff came from behind the Booth car immediately in front of her car and when she saw her it was impossible for her to stop (though she tried to do so) in time to avoid the injury, therefore it was an accident. While the plaintiff's evidence tended to prove that the defendant was not keeping, as it was her duty to do, a lookout for pedestrians using the street as they had the right to do, hence she did not slacken her speed nor sound her

automobile horn. It is the duty of drivers of auto-
mobiles upon the street to exercise reasonable care not
to injure pedestrians using the street with reasonable
care and that is a question for the jury. This is prac-
tically the only controverted fact in the case, and upon
which the evidence is conflicting. The verdict of the
jury apparently found that the defendant was not look-
ing and that the plaintiff was not guilty of contributory
negligence. Then upon these facts, by virtue of sec-
tion 6331, Virginia Code, 1919, and its purpose to give
litigants only *one fair trial*, the court was right in
overruling the defendant's motion for a new trial, un-
less the defendant's case was prejudiced by the instruc-
tions.

[10, 11] What instructions should be given for the
guidance of the jury and their nature depends upon the
evidence in the particular case. *Virginia Ry. & Power
Co.* v. *Smith and Hicks*, 129 Va. 269, 274, 105 S. E.
532, 534. Tested by this rule we find that in this case,
in which the controlling facts are so simple, that the
plaintiff asked and had given with some amendments
eleven instructions, while the defendant asked and had
given with amendments to some nine instructions when
three or four would have been ample. So many in-
structions could only have confused and misled the
jury. "It would require the closest study by one with
a trained mind properly to digest and appreciate the
distinctions between the several hypothetical propo-
sitions which they in varying form present. No aver-
age jury could have fully understood them." *Wash-
ington & O. D. Ry.* v. *Thompson*, 136 Va. 597, 119 S. E.
79.

[12, 13] The case was tried in part upon the theory
that even if the plaintiff was guilty of contributory
negligence, she ought still to recover because the de-

fendant had a last clear chance to avoid the accident. "In other words, the jury had before it two theories, upon either of which it might have found for the plaintiff, and since we cannot say which one was adopted by them, an error with respect to either would have to be regarded as prejudicial." *Va. Ry. & Power Co.* v. *Wellons, supra.*

The theory of instruction "C" was that the plaintiff was not negligent in crossing the street, if by looking when upon the north rail of the street car track, and seeing the automobile coming toward her at a distance of 125 feet away, a person of reasonable care would have thought it safe to proceed without further exercise of her senses for her safety, while instruction "A" assumed that the plaintiff *was negligent* in crossing the street without any further attention to the oncoming automobile, and that her state of negligence was notice of her danger to the defendant to exercise provision for her safety. In other words, the jury had before it two theories, upon either of which it might have found for the plaintiff, and since we cannot say which one was accepted by them, an error with respect to either would have to be regarded as prejudicial. "Where two instructions are inconsistent with or contradict each other it is impossible to say whether the jury were controlled by the one or the other." *Richmond Passenger, etc., Co.* v. *Steger,* 101 Va. 321, 43 S. E. 613; *Va. etc. Wheel Co.* v. *Chalkley,* 98 Va. 62, 66, 34 S. E. 976; *N. & W. Ry. Co.* v. *Mann,* 99 Va. 180, 187, 37 S. E. 849.

[14] There were two theories propounded by the evidence: (1) That the plaintiff was not negligent after looking and deciding that she could safely cross the street without injury, and (2) that the injury was the result of an unavoidable accident. The court instructed the jury upon these respective theories of the plaintiff and

defendant, but the plaintiff, without further evidence tending to prove facts which would make an instruction upon the doctrine of the last clear chance applicable, had that issue injected into the case. This doctrine is invoked so frequently in the last several years, that it may be useful to consider somewhat the principles upon which it is based, to determine the evidence necessary to establish liability under that doctrine.

In the *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379, the court reviewed the doctrine, beginning with *Davis* v. *Mann*, 10 Mees. & W. 545 (decided in the year 1842) down to the date of its opinion in 1910, and from reason and authority to settle the doctrine of the last clear chance upon a sound basis. It was greatly assisted by the able brief of counsel for the Southern Railway Company, wherein the reason and authorities were collated and set forth with great clearness. This case may be considered as the leading case on the subject in Virginia.

[15] It was settled in that case: (1) That where a person was on or in dangerous proximity to a railroad track, with his back turned to an approaching train and apparently in full possession of his senses, it was his duty to continuously exercise his faculties for his own protection and safety, and his negligence did not arise from his position, but his failure to protect himself from injury. A person may be rightfully upon a railroad track or street where trains and automobiles are constantly passing, therefore his position does not make him guilty of negligence. He is guilty of negligence only when he fails to do such things as reason and instinct of self preservation suggest for his own protection from injury, and this duty of self preservation, imposed by law and common prudence, continues as long as the possibility of his saving himself exists.

[16, 17] (2) The operator of the train (or the automobile) has the right to presume that the person will protect himself, and until it appears that he cannot or will not exercise his powers to protect himself, the operator is free from negligence. There must be evidence of some kind to show that the plaintiff cannot or will not exercise care for his own safety, and there must be sufficient time and opportunity after the discovery or duty to discover the plaintiff's danger from his own negligence for the operator to save him. If only a step or two from the track to safety is necessary or stopping before going on the track (or in the path of an automobile) which takes only a second of time to do, the parties at best would be guilty of concurring or simultaneous negligence and there could be no recovery. The court enunciated this rule of law by the following quotation: "If the continuing negligence of a plaintiff, up to the time of the injury, concurs with the negligence of the defendant in causing the injury, the plaintiff cannot recover." *Consumer's Brewing Co.* v. *Doyles' Adm'x*, 102 Va. 399, 46 S. E. 390.

It will thus be seen that there must be evidence or circumstances surrounding the injury, of probative value, to justify a court in instructing upon the doctrine of the last clear chance.

[18] We are not unmindful of the fact that the specific errors discussed above have not been assigned in terms in the petition for the writ of error or briefs of defendant's counsel, still it is our duty, under section 6331, Virginia Code, 1919, in order to *vitalize* said section, to consider the entire record of the law and the evidence and if the parties have had *one fair trial on the merits* affirm the judgment, if not remand the same for a new trial. So that the main question before the court is, has the defendant had a fair trial according to

the law and the evidence?  *Va. Ry. & Power Co.* v. *Smith, supra; Va. Ry. & Power Co.* v. *Wellons, supra.*

[19] On the other hand if, upon examination of the law and evidence in the case, the court is satisfied that no other verdict could be rendered the erroneous instructions would be harmless error and the judgment should not be disturbed.

"But this rule has no application in a case like this, where the evidence on the material questions involved is so conflicting that if the verdict had been in favor of the defendant the court could not have disturbed it." *Richmond Passenger, etc. Co.* v. *Steger, supra.*

This brings us to the consideration of the instructions upon the *doctrine of the last clear chance*, which have been very exhaustively and ably argued on both sides, and from the discussion thereof it would seem was the chief reliance of the plaintiff for her recovery, besides the defendant seems to regard it as the only ground for her negligence.  So that very careful examination must be given to the instructions and evidence to determine whether the doctrine applies.  At the instance of the plaintiff the court gave the following instructions: "The court instructs the jury that even though you may believe from the evidence that the plaintiff was guilty of contributory negligence, yet this will not prevent the plaintiff from recovering in this case if the jury shall further believe from the evidence that the defendant saw, or by the exercise of reasonable care and caution in keeping a lookout could have seen, that the plaintiff was in danger of being struck by the defendant's car and that said defendant could have stopped said car or guided it away from the plaintiff by the exercise of ordinary care, in time to have prevented said car from striking the plaintiff, but negligently failed to do so, then the jury should find for the plaintiff."

[20, 21] It must be observed that the instruction is an abstract statement of the law, does not point out to the jury when and where her peril should have been discovered by the defendant nor when she was guilty of contributory negligence.  The plaintiff in her evidence claimed that she was not guilty of contributory negligence, and knew that the Green car was approaching her and in order to warrant the instruction just quoted she must concede that her *glance* from the street car track was not that ordinary care for her safety required by law and upon this hypothesis the instruction was based.  Assuming that the plaintiff was negligent, it was her duty, with the automobile in plain view coming toward her, to have looked and stopped when such act would have been effective.  She had the same last clear chance to protect herself as the defendant had to protect her, for the doctrine of last clear chance is a duty imposed by law on both the plaintiff and defendant.  If being in plain view of each other and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery.  The plaintiff knew the automobile was approaching her, if she had looked she could have seen it coming and by delaying her journey a second or two or accelerating her speed at the last step there would not have been an accident.  *Stephen Putney Shoe Co.* v. *Ornsby's Adm'r*, 129 Va. 297, 105 S. E. 565; *McNamara* v. *Rainey Luggage Corp., et al.*, 139 Va. 197, 123 S. E. 513; *Va. Ry. & Power Co.* v. *Boltz*, 122 Va. 649, 95 S. E. 467.

In recent years many cases of the last clear chance have been before the Supreme Court in damage cases against railroads and street railways, so that the prin ciples upon which it is based may be said to be well settled.  There have been but few cases of collision be-

tween pedestrians and automobiles where it has been invoked, but the principles applicable are the same.

[22, 23] The foundation of the doctrine is that the parties are guilty of concurring negligence and there must be some condition, circumstance or superadded fact which one of the parties saw or by the exercise of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party, and the obligation of discovering the last clear chance is mutual. "One relying on the doctrine of the last clear chance has the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care after his peril was discovered there was in fact a last clear chance to save him." *Washington & O. D. Ry.* v. *Thompson, supra; Hendry* v. *Va. Ry. & Power Co.,* 130 Va. 283, 107 S. E. 716; *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r, supra; Ashby* v. *Va. Ry. & Power Co.,* 138 Va. 310, 122 S. E. 104.

[24, 25] There is no dispute as to the rules above cited, but the controversy arises generally whether the evidence has established facts which call for the application of the doctrine. Let us then examine the evidence in this case to see if the plaintiff has proven that her peril should have been discovered in time to avert the accident. The plaintiff was going north and defendant in her car was going west at almost right angles. Suppose the defendant had looked west when she was at Graveley and Penn alleyway, she would have seen a person in the full possession of her faculties, in no danger at that time, crossing the street; should they meet upon the street, it was the duty of the pedestrian to stop and give the automobile the right of way. There was certainly nothing in her manner or any knowledge possessed by defendant to arouse a suspicion that the plaintiff would not yield the right of way and the defendant

had the clear right to continue upon this assumption, otherwise all traffic would stop. "When a person sees another crossing the street, he is not required to stop his automobile; he has the right to assume that the pedestrian will use his faculties, otherwise traffic would stop," unless there is something in the manner or circumstances of the person to indicate he is unconscious of his danger.

Up to this point certainly neither party could be said to be negligent and the plaintiff was not in danger so that both of them could continue their journey. When they both arrived at a point on the street where they were about to meet, the plaintiff could certainly not have been more than a step or two from the track of the automobile, and the driver still had the right to assume that plaintiff would stop, and let her pass. Here it was the duty of plaintiff to look and if she had looked, she would have seen that the automobile would not check up. She did not look and when she had taken another step or two at most she was struck by the side of the automobile nearest the north curb of the street. Her *negligence* was not looking and stopping, or looking and then hastening her step which would have put her out of danger.

What was the negligence of the defendant up to this point, and where was the discovered peril until the moment of the collision? There is no evidence as to how far the pedestrian and automobile were apart when the driver could have seen plaintiff did not intend to stop, or whether the defendant could have stopped or turned her car to avoid the collision. The fact that plaintiff says she was walking slightly diagonally would convey no notice to defendant that plaintiff did not intend to stop before crossing in front of her automobile.

An examination of the authorities and especially the case of *Southern Ry. Co.* v. *Bailey, supra,* and the cases there cited, it is the well established rule of law in Virginia in the application of the doctrine of the last clear chance that, seeing a person in the apparent possession of all his faculties with back turned to an approaching vehicle, or with head bowed or turned away, approaching the track of the vehicle, with no superadded circumstances, or evidence of unconsciousness of peril, does not impose upon the operator of the vehicle the duty of prevision, he has the right to assume that a normal person in a situation requiring the exercise of prudence will use his faculties in time to prevent his injury. That is the course of human experience.

In *Hendry* v. *Va. Ry. & Power Co.,* 130 Va. 282, 107 S. E. 715, it was held: "If pedestrian, in full possession of his faculties, *having observed the near approach of a street car, neglect* to pay any further attention to it, but with nothing to obstruct his view undertakes to cross the street in front of it, and is immediately struck, he is guilty of a clear neglect of duty in not assuring or reassuring himself that he can cross the track in safety."

The case of *Ashby* v. *Va. Ry. & Power Co., supra,* is very similar to this case. An old lady, with shawl over her head, was going a *little diagonally to the east across* the street in the city of Richmond; she walked with her head bent, when she got near the street car track, the motorman and several passengers saw her approaching the car track. The motorman, assuming that she would stop before entering upon the car track, neither slackened the speed of the car nor sounded his bell, and when the car was nearly at the point where plaintiff would cross the track she stepped upon it and was injured. The court held that it was not a case for application of

the doctrine of the last clear chance, as there was no evidence of plaintiff's peril in time for the motorman to stop his car. The track was a warning to the plaintiff to look before going up the track. In the instant case the rapidly approaching automobile which plaintiff had seen and the right of way ordinance were warning to her to avoid it by use of her senses.

The plaintiff assumes in applying the doctrine of the last clear chance to the instant case that Mrs. Green was not looking when the plaintiff left the street car track and if she had looked she would have discovered the plaintiff's peril. This is not law, and no duty was imposed upon the defendant to assume that the plaintiff would walk from a place of safety into danger, if so, traffic would cease.

In view of the fact that the doctrine of the last clear chance has no application to the evidence in this case, and that the evidence presents a case of primary and contributory negligence for the decision of the jury under proper instructions, the defendant has not had a fair trial, leaving out of consideration the confusion necessarily occasioned in the minds of the jury by so many instructions. The verdict will have to be set aside. The judgment is reversed and the case remanded for a new trial to be had not contrary to this opinion.

*Reversed and remanded.*

### UPON A PETITION TO REHEAR.

February 26, 1925.

BY THE COURT:

The application for rehearing is rested upon two grounds.

[26] 1. That the error of the trial court in allowing the plaintiff's case to go to the jury upon the doctrine of

last clear chance was invited by the defendant, because the defendant likewise asked for an instruction upon this theory of the case. While the doctrine of invited error is well recognized in Virginia, we do not think it applies where the defendant is compelled to ask for an amendment to an instruction to be given for the plaintiff, or asks for a counter instruction contending that it more correctly states the law. The lower court was not led into error by the defendant. *Director-General* v. *Pence*, 135 Va. 351-2, 116 S. E. 351; *Whitten* v. *McClelland*, 137 Va. 741-2, 120 S. E. 146.

[27] 2. That in remanding the case the court should direct that the amount of damages be not again submitted to the jury on the further trial of the case, but the issue be confined to a finding upon the question of liability of the defendant. Under section 6365 of the Code of Virginia the court is given jurisdiction to so provide in its order. This jurisdiction has been exercised in *Whitten* v. *McClelland*, 137 Va. 726, 120 S. E. 146 and other cases by directing that the question of damages should not be tried again. Upon consideration of the entire record here and all the circumstances disclosed by it, we thought and still think that the ends of justice do not require that the court should do otherwise than remand the case generally for a trial *de novo*.

Therefore the petition for a rehearing is denied.

McLEMORE, J., dissenting.

I find myself unable to concur in the opinion rendered in this case, and am presenting herewith some of the reasons that impel me to a different conclusion from that reached by a majority of the court.

The majority opinion has reversed the case because the trial court instructed the jury on the "last clear

chance" doctrine; this court holding that the evidence in the case, although considered as upon a demurrer to the evidence rule, did not present a state of facts that would support an application of the doctrine of discovered peril or last clear chance.

For the purposes of this discussion the following may be stated as the pertinent facts proved:

Mrs. Ruffin, the defendant in error, attempted to walk across from the south to the north side of Main street in the city of Danville, which street runs east and west. She was attempting to reach her home situated on the north side of the street. The plaintiff in error, Mrs. Green, was driving a Ford sedan along the said street, going west and was therefore on the north side of the street. Upon this street there is a double track street car line, the north rail of the west bound track being fifteen feet from the north curb line that divides the driveway from the sidewalk.

Mrs. Ruffin had reached the north rail of the west bound car track, when she stopped for a moment or so, glanced to her right and saw approaching from the east the car of plaintiff in error, some 125 feet away. She immediately started to cross the fifteen feet of space to the curb, walking briskly, and with her face slightly in a westerly direction, and to that extent, with her back slightly towards the approaching car; that she looked straight ahead, and did not further observe the car, until it had struck her just as she was in the act of stepping on the sidewalk.

Mrs. Green, the driver of the car, for some unexplained reason, failed to observe Mrs. Ruffin during the entire period of her presence upon the street until the instant of the impact; when she (Mrs. Green) says she "saw a person moving very rapidly, running leaning over, very fast," and she stated to a companion in the

car that she feared she had hit someone. She also stated at the hospital to Mrs. Ruffin in the presence of Mrs. Slade, a sister of defendant in error, that "I didn't see you."

According to this evidence, by which the court is bound, Mrs. Green ran her car 125 feet during all of which time Mrs. Ruffin was in full view, and in a position of danger—from the moment she left the car track until struck at the curb. If plaintiff in error had been looking, she would have seen Mrs. Ruffin walking briskly to cover the danger space of fifteen feet, and would also have seen that she was not observing the rapid approach of the car, and would not clear the danger zone, although walking quickly and, as Mrs. Green says, "moving very rapidly, running leaning over, very fast" presumably in an effort to escape the car, and reach the position of safety.

It must not be forgotten that she was not moving towards the car, but the car was overtaking her; that she did not run into the car, but was run down by the car; that she was in a position of danger, the car in a position of safety; that she was trying to reach a point of safety by the quickest and most direct route, while the car was bearing down upon her by the *only route* that could have caused the injury, and overtook her just as she was reaching the curb; that the car had the entire street upon which to move, and escape the accident, save and except the small space occupied at the moment by defendant in error next to the curb; that from the first moment Mrs. Ruffin stepped in the path of the oncoming automobile she was in danger, and whether she tried to escape or not, it was necessarily apparent or should have been to any person of ordinary prudence, that injury to the pedestrian could be avoided by the exercise of the smallest amount of prevision.

During the entire time the car was traveling the 125 feet, the slightest turn of the wheel or retarding of the speed of the car would have saved her from injury; for running as she was to escape the car, only a second or two would have enabled her to have won the race with the car, and reached a position of safety.

There was apparently one doubtful chance to overtake and strike her while traversing the fifteen foot space, and many clear chances on the part of the driver of the car to avoid the collision, beginning when she stepped in the path of traffic, and continuing until almost the very moment of impact.

The law of the case seems to me to be controlled not by the decision in *So. Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, which was decided fourteen years ago, and was considering the doctrine as applied to railroad trains or other dangerous instrumentalities operating upon rails that give no freedom of direction but must move along a fixed path, and is a proclamation of danger to every person approaching them.

Besides, the facts in the *Bailey Case* bear not the slightest resemblance to those obtaining here. Bailey was standing so near the railroad track as to be struck by an engine which was approaching, in full view for some 1,000 feet. The engineer had a right to assume that he would not stand still and allow the train to strike him. The train was bound to follow the course fixed by the rails, and was therefore guilty of *no negligence.*

That line of decisions, *much more recent,* of which *Va. Ry. & Power Co.* v. *Smith*, 129 Va. 269, 105 S. E. 532, may be taken as a fair exponent, state the doctrine which seems to me to be decisive of this case, although it is not referred to in the majority opinion which ably

discusses the "last clear chance" doctrine at considerable length.

In the *Smith Case*, Kelly, P., says:

"It is quite conceivable that a motorman might have the right of way (as did this motorman) and yet see, or be in a position to see, that unless he slackened his speed or stopped his car a collision with a vehicle about to cross ahead of him would be inevitable. In such a case, if the discovery of the inevitable was made, or ought to have been made, before it was too late for him to slow down or stop, he would have the last clear chance to avoid the injury, and the street car owner would be liable, regardless of the fact that the negligent conduct of the driver of the vehicle precipitated the situation and continued up to the moment of impact. This was the essential, though not actually expressed holding in the *Meyer Case* and is here one of the views which the jury might have taken of the evidence."

It would seem that this decision and the majority opinion in this case under consideration are in direct conflict and may reasonably give rise to interesting speculation as to what the law on this subject is in this State.

In *McNamara* v. *Rainey Luggage Corp.* (decided June 12, 1924), 139 Va. 197, 123 S. E. page 518, it is said:

"And upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that if either party to an action involving the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other after its occurrence in time to foresee and avoid its consequences, then such party is held to have notice; and his negligence in not discovering the negligence of the other under such

circumstances is held the sole proximate cause of a following injury."

In Sherman & Red. on Neg. (5th ed.), section 99, it is said:

"The principle is that the party who had the last opportunity of avoiding the accident is not excused by the negligence of any one else. His negligence, and not that of the one first in fault, is the sole proximate cause of the injury."

Mrs. Ruffin's negligence must have been apparent, or there could be no last clear chance doctrine to invoke, for "the last clear chance doctrine presupposes the negligence of the party injured." *Wilson's Adm'x* v. *Portland Ry.*, 122 Va. 160, 94 S. E. 347.

"Not to discover negligence of another is negligence and the sole proximate cause of injury." *Va. Ry. & Power Company* v. *Cherry*, 129 Va. 262, 105 S. E. 657.

Thus we see that the failure of Mrs. Green, whose car did the damage, to discover the negligence (gross it may be) of Mrs. Ruffin, in attempting to cross the street 125 feet in front of the car, is negligence on the part of Mrs. Green and the sole proximate cause of the injury. The negligence of the plaintiff therefore did not prevent a recovery, if the accident could have been averted by the defendant.

"Persons walking on railroad tracks are not excused by the last clear chance doctrine, for inattention or for failure to keep a constant lookout in both directions for approaching trains, but if they have not done so and are discovered upon the track and the engineman can by signals warn them of approaching danger, and thereby obviate the consequences of this negligence, it is his duty to do so." *Gunter's Adm'r* v. *So. Ry. Co.*, 126 Va. 565, 101 S. E. 885.

If this rule applies to cases where trespassers are on

the track of railroads, utterly heedless of the danger of an approaching train that cannot change its course, and of the warnings furnished by the track itself; a *fortiori*, should it be given effect, when the dangerous instrumentality is an automobile subject to well-nigh instant control of speed and change of direction.

"The negligence of a plaintiff who is injured while violating an ordinance, like his negligence in any other form, must proximately contribute to the injury in order to constitute a bar to recovery, and it does not so constitute in contemplation *of law.* (Italics ours.) If after the plaintiff's peril is, or ought to be, discovered, the defendant had a last clear chance to avoid the injury." *Cherry's Case, supra.*

So Judge Sims says in *Director General* v. *Blue,* 134 Va. 366, 109 S. E. 482, 114 S. E. 557:

"The reason of the thing, as well as the uniform course of authority, lead irresistibly to the conclusion that the doctrine of the last clear chance applies just as well when it is apparent that a person is on the verge of stepping heedlessly into danger, *as when it appears that he is likely not to change his position so as to get out of danger.*" (Italics ours.)

Let us assume that defendant saw the plaintiff on the street car track "on the verge of stepping heedlessly into danger" or at the moment she left the track or when she was half across the intervening space of fifteen feet from the rail to the curb—the law imposes this duty upon her—*Cherry's Case, supra.* Let us also assume that Mrs. Green was one hundred and twenty-five feet away when plaintiff stepped in the path of danger; that Mrs. Ruffin traveled in a slightly diagonal direction from the approaching car, and was looking straight ahead as she crossed the street, and continued so to look after having once glanced to her right as she

left the north rail of the car track, and saw the car about one hundred and twenty-five feet away; and that while traveling the entire one hundred and twenty-five feet, Mrs. Green was looking at plaintiff, and while thus looking, ran her down at or near the north curb of the street, inflicting the injuries complained of, seeing all the while that Mrs. Ruffin was not noticing the approach of the car. It can hardly be denied that under such circumstances a continuing opportunity was presented to plaintiff in error, if she had been looking, to have avoided the injury.

Upon a motion to set aside the verdict, we must assume every fact above recited as established. We are entirely satisfied that had Mrs. Green seen the defendant in error, the accident would not have occurred, for a turn of the steering wheel when only ten or fifteen feet away would have unquestionably prevented it (for she was just in the act of stepping upon the curb when struck), yet the law imposes upon her the duty of seeing and her failure to perform her duty in this behalf in no sense relieves her of the obligations thus imposed— nor of the legal consequences that follow.

In collision cases between vehicles and pedestrians, it is almost always the pedestrian that is injured. If the failure of the pedestrian to observe the approach of, and avoid collision with, the vehicle is such contributory negligence as will bar a recovery, then verily, there can be no recovery in those cases where an individual is killed or injured in crossing a street, however reckless the driver may be. The pedestrian must see the danger and avoid it or be precluded by the court because of his negligence, and this without regard to the negligence of the driver. Thus the doctrine of discovered

peril, or last clear chance, has been successfully abrogated in cases of collision upon public thoroughfares.

It has been stated in the majority opinion that the instructions present two theories of the plaintiff's case, producing a conflict and inconsistency that entitles the plaintiff in error to a new trial.

Where the trial court has instructed the jury upon more than one count in the declaration, or one theory of the case, and this court upon review is of opinion that one of the theories upon which instructions were granted would not justify a recovery, the verdict and judgment should be set aside, for the court cannot say but that the jury rendered their verdict upon that phase of the case that did not properly state a cause of action.    But this is not true in those cases where there is sufficient in the pleadings, and in the evidence responsive thereto, to justify a verdict upon either of the allegations of negligence to which the jury have had their attention directed by the instructions.    *Low Moor Iron Company* v. *La Bianca's Adm'r*, 106 Va. 83, 55 S. E. 532, 9 Ann. Cas. 1177; *Adamson's Adm'r* v. *Norfolk & Portsmouth, etc., Co.*, 111 Va. 456, 69 S. E. 1055; *Washington & So. Ry.* v. *Cheshire*, 109 Va. 741, 65 S. E. 27.

For the reasons stated the conclusions reached by the trial court seem to be right and the judgment should be affirmed.