# Richmond.

## VAN SICKLER, ADM'R, ETC., v. WASHINGTON AND OLD DOMINION RAILWAY.

### May 28, 1925.

1. CROSSINGS—*Collision at Crossing—Last Clear Chance between Impact and Injury to Plaintiff's Intestate—Case at Bar.*—In the instant case, an action for death of plaintiff's intestate in a collision at a crossing between decedent's automobile and an electric car, the motorman was guilty of no negligence up to the time of the impact, and if decedent's death had occurred at that time, it would have been the result of his own primary negligence. But the injury resulting in death did not occur at the time of the impact, and there was sufficient evidence for the trial court to have submitted to the jury, under proper instructions, the question as to whether after the impact the motorman in the exercise of ordinary care could have brought the car to a stand still in time to have saved the life of the decedent.

   *Held:* That the action of the trial court in excluding the theory of the "last clear chance" from the consideration of the jury was error.

2. CROSSINGS—*Collision between Automobile and Electric Car—Case at Bar.*—Where an electric car had the right of way over travelers along a public road and the motorman had given the usual car signal, and was proceeding to cross at a slow rate of speed, after having observed the driver of an automobile in a place of perfect safety, slowing down or stopping in full sight of his approaching car, he had a right to assume that the driver would remain there and that he would not attempt to beat the car over the crossing.

3. WITNESSES—*Questions of Law and Fact—Credibility for the Jury—Case at Bar.*—In the instant case, while there was ample evidence to support the verdict and judgment for the defendant, there was evidence to support the plaintiff's theory of the case also; and, while it is true that much of it fell from the lips of witnesses who may have had reason for bias or prejudice, or witnesses whom the defendant made an effort to impeach, yet the credibility of these witnesses was for the jury to pass upon; and it was for the jury to say whether such evidence should be given sufficient weight to make it preponderate over that of the defendant.

4. LAST CLEAR CHANCE—*Burden of Proof—Statement of the Doctrine.*—Subject to the restriction that the burden is upon the plaintiff to prove

by a preponderance of evidence that after his peril became imminent there was clear opportunity to save him from the consequences of his own negligence, if it appears that those in control of a train or electric car, in discharge of their admitted duty to keep a reasonable lookout, discovered, or should have discovered, a person on the track and there be superadded in addition to the mere presence of such person on the track, which alone is not sufficient, any fact or circumstances brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger, and will take no steps to secure his own safety, or is unable to avoid the peril, then the situation changes and the negligence of the person injured becomes the remote cause, or a mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery.

5. CROSSINGS—*Collision between Automobile and Electric Car—Last Clear Chance—Superadded Fact—Case at Bar.*—In the instant case, arising out of a collision of an automobile and electric car, if the driver of the automobile had been killed at the moment of impact, there could have been no recovery; but after the collision occurred it was the duty of the motorman to bring his car to a stop as speedily as possible, because it was clear to him that the driver was unable to save himself. The car could have been stopped in from two to four feet, certainly in from ten to twelve feet, and it proceeded from thirty to forty feet, pushing the automobile in front of it until finally the driver was thrown out and killed.

*Held:* That the doctrine of "last clear chance" applied, the superadded fact being that the electric car was pushing the automobile in front of it.

6. CROSSINGS—*Negligence—Sudden Emergency.*—Where an employee of a railroad company is confronted with sudden emergency, the failure on his part to exercise the best judgment the case renders possible, does not establish such lack of care and skill upon his part renders the company liable. Thus a motorman's actions at the time of a collision with an automobile ought to be judged under all the circumstances of the case by the standard of what a prudent person would have been likely to do under the same circumstances.

7. WITNESSES—*Questions of Law and Fact—Conflict in Evidence—When Airline Broke in Collision between Electric Car and Automobile—Case at Bar.*—In the instant case, arising out of a collision between an automobile and an electric car, the question of when the airline leading to the airbrake control was broken was of importance. The motorman testified that the airline was broken at the time of the impact. But there was evidence that the electric car ran thirty or forty feet after the collision occurred; and the breaking of the airline would automatically and immediately apply the emergency brake and stop the car.

*Held:* That the question of when the airline broke was for the jury under proper instructions.

8. CROSSINGS—*Collision between Automobile and Electric Car—Witnesses—Correction of Witness's Testimony as to Distance Car Ran after Collision.*—In an action arising out of a collision between an automobile and an electric car, a witness testified that he estimated that the electric car shoved the automobile about twelve feet from the point of impact. The next day he was recalled and asked whether he had not, since he testified, actually measured the distance, and if so what he found it to be. He was examined in the absence of the jury and said he had measured the distance.

*Held:* That this testimony should have gone to the jury for whatever worth they saw fit to attach to it as an attempt to correct an estimate of distance by actual measurement, and if there were any attendant circumstances which cast doubt upon the accuracy of the measurement it was for the jury to disbelieve or discard the evidence and not for the court to exclude it.

Action by George F. Van Sickler, Administrator of the estate of Scott Van Sickler, deceased, against Washington and Old Dominion Railway, a corporation. Judgment for defendant. Plaintiff brings error.

*Reversed.*

The opinion states the case.

*Barbour, Keith, McCandlish and Garnett,* and *George B. Robey,* for the plaintiff in error.

*Wilton J. Lambert* and *Wilson M. Farr,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

[1, 2] This action was instituted by the plaintiff to recover of the defendant (the Washington and Old Dominion Railway, which operates an electric railway from Washington, D. C., to Great Falls, in Fairfax county, Virginia), the sum of $10,000.00 for death of Scott Van

Sickler which resulted from a collision between his automobile, which he, himself, was driving, and the company's electric car, designated in the record as car No. 14.

The case was tried solely upon the theory, from the plaintiff's standpoint, that the motorman had a "last clear chance" to stop the car and avoid injuring plaintiff's decedent. The action of the trial court in excluding this theory from consideration of the jury, not only by refusing the instruction presented by the plaintiff submitting this proposition to the jury, but by affirmatively instructing the jury the doctrine of the "last clear chance" did not apply to this case, is practically the sole question for review by this court.

The collision occurred at McLean, a station on the company's road, at a point where the macadamized State highway leading from Fairfax C. H. to Washington, D. C., crosses the defendant company's tracks almost at right angles, the public road running practically north and south, Washington being to the north and Fairfax C. H. to the south, while the railroad, at this point, runs in the general direction of east and west, Washington being the eastern terminus and Great Falls the western.

The station proper, which was nothing more than a shed eight by ten feet, was located, at the time of the accident, to the north of the railroad tracks, and to the west of the public road. The distance from the eastern end of this station house, or shed, to the western edge of the public road is variously estimated at from twenty-three feet (W. E. King, a witness for the defendant) to forty-one feet (Earl D. Saunders, a witness for plaintiff).

At the time of the accident the road, while the right of way was probably thirty feet wide, was only macadam-

ized for a width of fourteen feet. The defendant company maintained two tracks upon its right of way, one for westbound traffic and one for eastbound traffic.

After the accident and before the trial of this action in the Circuit Court of Fairfax county, the company removed the station shed above referred to and built a new station on the south side of its tracks, practically opposite the old station, that is, practically the same distance from the west side of the public road. It is not intended that mention of this fact shall be the basis for argument that the company had any ulterior motive in making the change, but making the change made possible the very great discrepancy in estimates of the distance from the old station shed to the western edge of the public road. It is obvious that there could have been no conflict upon this point if the building had not been removed. The materiality of this location in considering the proposition presented to this court in this case will appear later.

On the morning of the accident, at about six thirty, plaintiff's decedent was driving north along the public road from his home in Fairfax county to Washington, D. C., where he was daily employed as a carpenter. The morning was clear and the view was unobstructed as to cars approaching the crossing from either direction. As he neared McLean crossing the electric car, No. 14, manned by conductor William J. Priebe and motorman Robert Gant, approached the crossing from the east on the westbound track. William J. Priebe, who was at that time acting as motorman, gave the usual crossing signal and slowed down his car without stopping, and after observing Van Sickler's approach and noting that he slowed down or stopped his automobile before reaching the company's eastbound track, he built up his speed, as he expressed it, to from three to five miles an

hour, in order to make the crossing and the station beyond it.

It appears, from all the evidence, in spite of the fact that the electric car was in the act of crossing the public road, that the deceased, who was in a place of safety at the time he was observed by the motorman, after slowing down or stopping, suddenly conceived the idea of beating the electric car across, and proceeded to try to do so by cutting around to the left in front of it. The motorman testified upon this point, and there is no contradiction of his testimony, that after seeing Van Sickler slow down or stop, he did not see him again until his automobile was within one or two feet of his car, and that the collision occurred immediately thereafter.

There is no doubt and there is no question as to the responsibility for the *collision.* There is not a vestige of evidence indicating any negligence on the part of the company. On the other hand, plaintiff's decedent was guilty of the grossest sort of negligence. The electric car had the right of way over travelers along the public road. The motorman had given the usual crossing signal and was proceeding to cross at a slow rate of speed after having observed Van Sickler in a place of perfect safety, slowing down or stopping in full sight of his approaching car. He had a right to assume that he would remain there and that he would not attempt to beat the car over the crossing. *Morton's Ex'r* v. *So. Ry. Co.,* 112 Va. 398, 71 S. E. 561; *Derring's Adm'r* v. *Va. Ry. & Pow. Co.,* 122 Va. 517, 95 S. E. 405.

It is clear that when Van Sickler was next seen by the motorman it was too late to avoid the collision, and it follows that if Van Sickler's death had occurred at the time of the impact it would have been the result of his primary negligence, without any fault upon the part of the railway company, and there could have been no recovery.

But the injury resulting in the death of Van Sickler did not occur at the time of the impact. We are confronted with the proposition as to whether there is sufficient evidence in the record to sustain a verdict for the plaintiff, if one had been found for him by the jury. That is, whether there was sufficient evidence for the trial court to have submitted to the jury, under proper instructions, the question as to whether, after Van Sickler's peril and his inability to extricate himself therefrom became apparent to the motorman, the latter, in the exercise of ordinary care, could have brought the electric car to a standstill in time to have saved the life of the former.

It could not be, and has not been, argued that when the motorman, driving car No. 14, discovered that Van Sickler was undertaking to "brush by" in front of him, as he crossed the public highway and collided with him, that he (the motorman) did not owe Van Sickler the duty to bring his car to a stop as speedily as possible in order to avoid injuring him, and this is true however recklessly negligent the driver of the automobile was. This being true, if there is any evidence in the record to which the jury, as reasonable minded men and as the judges of the weight of the evidence and the credibility of witnesses, could legally give credence, that the motorman did not, after he discovered Van Sickler's peril and his inability to extricate himself from it, bring his car to a stop as quickly as he could and should have done, and that his failure so to do resulted in the death of plaintiff's decedent, then it was error not to submit these questions to the jury under proper instructions. If there was a conflict upon these questions the decision thereof was for the jury. *Ashby* v. *Virginia Ry. & Pow. Co.*, 138 Va. 310, 122 S. E. 104.

[3] The learned judge of the trial court refused to

grant an instruction asked for by the plaintiff, the object of which was to submit to the jury the question as to whether the motorman, operating car No. 14, had a "last clear chance" to avoid killing Van Sickler. We think the trial judge erred in this. While, of course, there was ample evidence to support a verdict for the defendant, we think there was evidence to support the plaintiff's theory of the case also, and while it is true that much of it fell from the lips of witnesses who may have had reason for bias or prejudice, or witnesses whom the defendant made an effort to impeach, yet, as has been said, the credibility of these witnesses was for the jury to pass upon, and it was for the jury to say whether such evidence should be given sufficient weight to make it preponderate over that of the defendant.

It is not necessary in this opinion, under the circumstances, to review the evidence introduced on behalf of the defendant on the question now under discussion. It *is* necessary to review briefly that introduced on behalf of the plaintiff, in order to ascertain whether, as a matter of law, it was sufficient, if the jury accepted it as true and rejected that of the defendant in conflict with it, to support a verdict for the plaintiff.

Under the theory of the plaintiff the motorman was charged with negligence in that after Van Sickler's peril and his inability to extricate himself became known to him, or should have become known to him, he could have stopped his car; that he failed to do so, and that his failure so to do resulted in Van Sickler's death. To this end evidence was introduced:

1. As to how quickly the car *could* have been stopped;

2. As to the distance the car ran after the collision; that is, as to how far the car ran after Van Sickler's peril became known, or should have become known, to the motorman;

3. The time the fatal injury was inflicted.

1. John F. Keyes, a former employee of the company who had operated car No. 14, and had worked for the company a number of years as a motorman and in other capacities, testified that running at a rate of speed of from three to five miles an hour and pulling a two and seven-tenths per cent. grade, the car could have been stopped in from two to four feet. There was no dispute as to the speed at which the car was moving or as to the grade it was pulling. This witness not only had operated the very car under discussion, but had worked a long time in the company's shops and could "take one of these cars apart and put it together again," so he fully qualified as an expert, and while he had been discharged by the company and had appeared as a witness against it in another action for damages, his credibility was a question for the jury and not for the court. The motorman, Priebe, who was operating the car at the time of the accident, testified that the car could have been stopped in ten or twelve feet.

2 and 3. There is no conflict in the evidence that after the collision took place the electric car pushed the automobile, with the plaintiff's decedent in it, along up the track in front of it, or that Mr. Van Sickler was killed at about the moment that the car was brought to a standstill.

The uncontradicted testimony was that the wheels of the automobile were broken down but that the automobile was never overturned, only partially so, and that Mr. Van Sickler was thrown out or jumped out, his head being crushed, and that he was lying under the left front fender of the automobile with no part of the car resting upon him. There is considerable conflict as to how far the automobile was pushed. But there was evidence introduced by the plaintiff that supported his

contention that the collision occurred on the macadamized surface of the public road about five feet from the western edge thereof, and there was the testimony of Earl Saunders, who was introduced by the plaintiff, to the effect that when the electric car finally stopped, the body of Van Sickler was lying "right up in front of the old station." We have seen how far this station was from the west side of the public road. Other witnesses testified that the body was lying at the east end of the old station. Others that the car was pushed thirty feet or more.

Hudie Honesty (colored), a passenger on the car at the time of the accident, after testifying that the car pushed the automobile thirty or forty feet up the track after the collision, and then "it looked to me like it was bottom side up," further testified that the conductor, who was acting as motorman at the time and was operating the car, while the motorman, who was acting as conductor at the time, was sitting in the fourth seat from the front, "turned the car loose and ducked back in the door and this other gentleman went up to the brakes of the car, went up there to the brakes. When I got outside this here other gentleman who was sitting in the seat had hold of the brakes and was trying to get the car back off the automobile."

Saunders, the witness above referred to, was a connection by marriage of the deceased, and there was considerable evidence or evidence of facts which tended to impeach the witness Hudie Honesty, or to indicate that he was unreliable or prejudiced, but, again, it was for the jury and not the judge to weigh the testimony of these witnesses and give credit or discredit as they felt such evidence was entitled to.

It is not necessary to go any further into the evidence. There is more of the same purport but enough

has been shown to indicate that there was evidence, which the jury should have been permitted to weigh, tending to support the theory of the plaintiff, and which, we think, would have supported a verdict for the plaintiff if the jury had been permitted to consider it after being properly instructed, and had found for the plaintiff.

[4] We are fully aware that the theory upon which this case was tried (the doctrine of the "last clear chance") is one involving nice distinctions, often of a technical nature, and that courts should be wary in extending its application. Especially is this so because there can be no "last clear chance" invoked by a plaintiff unless he himself, by his own negligence, has primarily brought about the situation which put upon the defendant an extraordinary duty which otherwise would not have rested upon him.

And so the courts have hedged about the application of the doctrine with appropriate precautionary rules. As said by Judge Prentis in *Gordon's Adm'r* v. *Director General*, 128 Va. 426, 104 S. E. 796:

"The doctrine is humane, but there is grave danger that sometimes it may be inhumanely or negligently applied. It is necessary, in order to justify the imputation of such negligence to the engineer, to show that after he discovered, or should have discovered, the pedestrian's obliviousness to his own peril, because in some way indicated, that then—that is, after such discovery—he, the engineer, had the clear opportunity or chance to avoid the injury by the use of the available means, and that he failed to exercise ordinary care to do so. This decisive fact should be shown like any other necessary fact, by a preponderance of the evidence; it should not be lightly inferred merely because of the disaster, or from unconvincing testimony."

In the still more recent case of Hendry v. Va. Ry. & Pow. Co., 130 Va. 282, 107 S. E. 715, the same learned judge says:

"In order to apply that doctrine (last clear chance) the burden is upon the plaintiff, who is confessedly negligent, to prove by a preponderance of the testimony that after his peril became imminent there was clear opportunity to save him from the consequences of his own negligence, and this fact must be proved like any other fact upon which the plaintiff relies. Real Estate, etc., Co. v. Gwyn, 113 Va. 337, 74 S. E. 208; Norfolk Southern R. R. Co. v. Smith, 122 Va. 302, 94 S. E. 789; Gunter v. Southern Ry. Co., 126 Va. 565, 101 S. E. 885; Gordon's Adm'r v. Director General, 128 Va. 426, 104 S. E. 796."

In Roanoke Ry. Co. v. Carroll, 112 Va. 598, 72 S. E. 125, Judge Whittle says:

"The plaintiff must show that at some time, in view of the entire situation, including his own negligence, the defendant was thereafter culpably negligent and that such negligence was the latest in succession of causes."

But, subject to these restrictions, if it appears that those in control of a train or electric car, in discharge of their admitted duty to keep a reasonable lookout, discovered, or should have discovered, a person on the track and there be superadded in addition to the mere presence of such person on the track, which alone is not sufficient, any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger, and will take no steps to secure his own safety or is unable to avoid the peril, then the situation changes and the negligence of the person injured becomes the remote cause, or a mere condition of the accident, and the negligence of the railroad company the

proximate cause, and there may be a recovery. *So. Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365; 27 L. R. A. (N. S.) 379; *Norfolk-Southern R. R. Co.* v. *Crocker*, 117 Va. 327, 84 S. E. 681; *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742.

"Not only must the defendant have had actual knowledge of the plaintiff's dangerous situation, but he must have been aware also of the plaintiff's unconsciousness of, or inability to avert, the peril.   The plaintiff's right of recovery exists when the defendant, after having discovered his peril, having also reasonable ground to believe him unconscious of danger, or unable to avoid it, might, himself, by the exercise of ordinary diligence, have prevented the mischief which followed." 20 Rul. Case Law, page 143, section 117.

In the light of the law as above set forth the jury could legally have taken this view of the case after considering all the evidence:

[5] That plaintiff's decedent was guilty of negligence in undertaking to beat defendant's car across the tracks when it was in full view, had the right of way, and was actually proceeding across the highway at the time; the collision was entirely due to his negligence and if Van Sickler had been killed at the moment of impact there could have been no recovery; but after the collision occurred it was the duty of the motorman to bring his car to a stop as speedily as possible, because it was clear to him that Van Sickler was unable to save himself, and that if he did not do so the ultimate result would be that the automobile would be crushed down and Van Sickler injured or killed; that the car could have been stopped in from two to four feet, certainly in from ten to twelve feet, under the conditions obtaining at the time; that it proceeded from thirty to forty feet, pushing the automobile in front of it until finally plaintiff's decedent was thrown out and killed.

The superadded fact or circumstance in addition to the presence of the person on the track, under the evidence here, being that the person was in an automobile and the automobile, at right angles to the electric car, was being pushed along up the railroad track in front of the car; that the occupant of the automobile was clearly unable to avoid the peril of his position, and that if the electric car was not speedily stopped ultimately, but inevitably, the automobile would be crushed down and its occupant injured or killed. It was for the jury to say, under all the evidence and proper instructions (taking into consideration the time within which the motorman had to act, and all the surrounding circumstances and conditions), whether he could have avoided killing Van Sickler and failed to do so.

[6] *Lewis* v. *Long Island R. Co.*, 162 N. Y. page 52, 56 N. E. 548, the court observes:

"Where an employee of a railroad company is confronted with sudden emergency, the failure on his part to exercise the best judgment the case renders possible, does not establish lack of care and skill upon his part which renders the company liable. The short period of time in which he was obliged to act, the impending danger to the train, to himself, to his passengers, with the consequent excitement attending such a situation, the various acts required to stop or lessen the speed of the train and all of the circumstances surrounding him at the time, should have been presented to the jury and considered by it before it could properly find the defendant negligent by reason of the acts of the emergency."

That is the motorman's actions are to be judged under all the circumstances of the case by the standard of what a prudent person would have been likely to do under the same circumstances. *Barnes* v. *Danville*

*Street Ry. Co.*, 235 Ill. 566, 85 N. E. 921, 126 Am. St. Rep. 237.

[7] It was a fact proven in the case that the airline, leading to the airbrake control, was broken.   We think from the record as it stands that the question as to *when* this happened was one for the jury to answer under proper instruction.   It is true the motorman said he heard the air escaping immediately after or at the time of the impact, but the evidence also established it as a fact that the breaking of the airline on car No. 14 would automatically and immediately apply the emergency brakes, cut off the electric current and bring the car to a stop.   The testimony of the motorman, therefore, that the airline broke at the moment of impact is in conflict with the testimony of witnesses that the car ran thirty or forty feet after the collision occurred.   It was possible for it to have broken at the moment of impact or at any time during contact between the car and the automobile.

In the case of *Texas & P. Ry. Co.* v. *Carlin*, 189 U. S. 354, 23 S. Ct. 585, 47 L. Ed. 849, the court said:

"Upon the second ground we are of opinion that there was evidence sufficient to go to the jury upon the question of the negligence of the foreman in failing to discover the maul upon the bridge immediately prior to the passage of the train.

"The foreman himself swears that he did look along the track just prior to the coming of the train, and that he did not see any obstruction on the track, and did not see the spike maul in question.   Whether he looked or not is, under the evidence, one of the material facts in the case.   He says that he did, but we are of the opinion that other facts proved in the case were of such a character as to make it proper to submit the question to the jury."

The time the airline broke is important.   If it broke at the time or just before the car stopped, it has no important bearing on the case.   If it broke at the moment of impact, then, according to the evidence as stated above, the emergency brakes would be automatically applied immediately and the electric current cut off and the car would come to a standstill.   This is all the motorman could have done or all he could have been required to have done if the airline had not broken.   If the jury believed from the evidence it broke at the moment of impact it follows that the company would not be liable.   The motorman could not have been guilty of negligence, if, through the plaintiff's negligence, he was deprived of control of the car.

[8]  It is only necessary to dispose of one other ground of exception.   When the witness, H. A. Torreyson, called by plaintiff, was on the stand on the first day of the trial he estimated that the electric car "shoved him (Mr. Van Sickler in his automobile) right along slowly up about twelve feet where the little station comes right up to the railroad track."   He was recalled on the second day of the trial and was asked, in substance, whether he had not, since he testified as to his estimate of the distance the electric car shoved the automobile, actually measured the distance, and if so what he found it to be.   He was examined in the absence of the jury and he said that when he testified on the day before he was guessing at the distance and that on that day he had measured the distance from the point where the car struck the automobile to where the man's head was lying and it measured thirty-two feet.   It is true he went to make the actual measurement with Saunders who was a relative of the deceased and he was somewhat shaken on cross examination, but he stated he knew exactly where the blood spot was where the man's

head lay, could put his hand "right on the spot." This testimony should have gone to the jury for whatever worth they saw fit to attach to it. This was an attempt to correct an estimate of distance by actual measurement, and if there were any attendant circumstances which cast doubt upon the accuracy of the measurement it was for the jury to disbelieve or discard the evidence and not for the court to exclude it.

It is unnecessary to pass upon the instructions given at the request of the defendant, to which exceptions were taken, as it is apparent in what respects they are in conflict with the views here expressed, and in all events the instructions presented at a new trial will have to be made to conform to the evidence taken at such trial.

There were no physical facts established by the evidence which, of themselves, nullify the evidence submitted by the plaintiff to the effect that the automobile was pushed along the track for a distance of from thirty to forty feet. It was argued that after the electric car was brought to a standstill it still blocked the highway to such an extent that it stopped traffic until it could be backed to the east thereof, and that this fact negatived the possibility of the automobile being pushed as far as witnesses for plaintiff testified it was pushed. But the electric car was from forty-five to fifty feet in length; the roadway was macadamized, at the time of the accident, for a width of fourteen feet; there was testimony to the effect that the collision occurred about the center of the roadway, so that if fourteen feet of the electric car had been left across the highway, which was sufficient to block it, there would have been from thirty to thirty-five feet extending across on the west side of the highway when the car was stopped. The evidence was indefinite as to the exact location of the car at this time, but as it appears from the record there was noth-

ing in the record upon this point that was inconsistent with the plaintiff's theory and evidence.

On the whole we are of opinion to reverse the judgment of the trial court and to remand the case for a new trial to be had in conformity with the views above expressed.

*Reversed and remanded.*