Syllabus.

## Richmond.

### The Chesapeake and Ohio Railway Company v. C. H. Steele's Administratrix.

#### November 18, 1926.

1. NEGLIGENCE—*Action for Negligence—Several Grounds of Negligence Relied Upon by Plaintiff—One Ground Sustained by Proof.*—In an action for death of plaintiff's intestate, plaintiff based her right of recovery upon three alleged acts of negligence of defendant. If there was any one ground of negligence sustained by the proof, and the jury were correctly instructed, the plaintiff was entitled to recover such damages as might be ascertained by the jury within the limit prescribed by law, unless prevented from so doing by some rule of law, or some act or default upon the part of her intestate.

2. DEATH BY WRONGFUL ACT—*Master and Servant—Yard Conductor Killed by Engine that Struck Him then Reversed and by so Reversing Killed Him—Case at Bar.*—In the instant case, an action for the death of a yard conductor, it appeared that the conductor was killed at a crossing while in performance of his duties. Plaintiff introduced evidence to show that after the train had struck the conductor and carried him westward for some distance and had then come to a stop, the engine was reversed which caused it to move eastward and it was this eastward movement which caused the conductor's death. Defendant introduced evidence to the effect that the engine was not moved eastward, or that, if it was so moved, such movement was due to the rebound of the train. The engineer testified that he knew that the conductor was under the car. The jury heard the evidence on the two theories and found for the plaintiff.

   *Held:* That the verdict of the jury was conclusive and that there was evidence sufficient to sustain it.

3. DEATH BY WRONGFUL ACT—*Yard Conductor Killed at a Crossing—Instructions—Ordinary Care—Reversing Engine—Case at Bar.*—A yard conductor while on duty was killed at a crossing. At the request of the plaintiff the jury were instructed that it was the duty of the defendant company to exercise reasonable care in the movements of its trains, and that if they believed that plaintiff's intestate, "while in the performance of his duties, caught his foot under a board of the crossing in the notice mentioned, and fell or was thrown in front of the defendant's train that was moving backwards, then

it became and was the duty of the engineer, if he saw and knew the danger that the plaintiff's intestate was in, to do all that he could to avoid injuring the deceased."

*Held:* That there was no error in the instruction. It was the duty of the engineer to do all that he could to avoid injuring the conductor. This could only mean the exercise of ordinary care. Ordinary care, in this instance, was to let the engine remain stationary. This the engineer did not do, according to plaintiff's evidence.

4. Master and Servant—*Railroads—Degree of Care Owed to Employee, Trespasser or Licensee.*—In the instant case, a yard engine conductor was struck by a train at a crossing while in the performance of his duties. After he was struck and was lying under the train, which had come to a stop, the movement of the train was reversed and he was killed.

*Held:* That with full knowledge of its employee's peril, brought about by no fault of his, the defendant owed him a higher duty than it would have owed a trespasser or a licensee.

5. Railroad—*Injuries on or Near Tracks—Duty of Engineer or Motorman.*—A locomotive engineer, or motorman, after becoming aware of the presence of any person on, or dangerously near, the track, however imprudently or wrongfully, is bound to use as much care to avoid injury to him as he ought to use in favor of one lawfully and properly upon the track; that is to say, ordinary care with respect to anticipated injury before it becomes imminent; and the utmost care and diligence of which he is personally capable after he knows that it is imminent. This rule applies to all cases, even of the most outrageous negligence on the part of the person on the track; and, if this principle may be invoked in favor of a trespasser, then it applies with even greater force to an employee.

6. Death by Wrongful Act—*Instructions—Employee Killed by Being Struck by Train—Case at Bar.*—In an action for the death of an employee who was struck by a train while in the performance of his duties, the defendant asked an instruction which told the jury there was no evidence upon which they could find the engineer of the train guilty of negligence, and that, as a matter of law, the plaintiff was not entitled to recover.

*Held:* That, where the evidence was conflicting as to whether the engineer could have saved plaintiff's intestate, the trial court was right in refusing the instruction both as to the evidence and as to the law.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Chas. Curry* and *Timberlake & Nelson,* for the defendant in error.

Campbell, J., delivered the opinion of the court.

This notice of motion was filed by C. H. Steele's administratrix against the railway company, to recover damages for the death of the plaintiff's intestate, caused by the alleged negligence of the defendant company.

The notice contained eight counts, but only three counts were actually relied upon in the trial of the case. The grounds of negligence alleged in these three counts were:

(1) That the east ends of the boards of the crossing between the main line and the straight track were above ground, so that plaintiff's intestate, while going westward, caught his foot under the end of the boards and was thrown in front of an approaching train;

(2) That the engineer of the engine pushing the cars saw Steele's danger, yet failed to do all that he reasonably could have done to avoid injuring him, and carelessly and negligently ran the rear of the train over him; and

(3) That after the train had been stopped, the engineer carelessly and negligently reversed his engine and ran the train forward, dragging and fatally injuring plaintiff's intestate.

The company relied upon the defense that the crossing was not defective and that it had no part in the accident; that the intestate had full knowledge

of the condition of the crossing and had assumed the risk incident to the employment; that the engineer was not negligent, stopping the engine immediately he saw the intestate fall, and thereafter not moving it; and that the intestate's injury resulted solely from his own conduct.

It appears that Steele was employed as a brakeman by the company, but on the day of the accident was acting as yard conductor on the company's railroad yards at Waynesboro.

Steele, who was thirty-nine years of age, was an experienced railroad man, intelligent and active. The yard crew on this day consisted of Steele; three brakemen, Cook, Burgess and Dameron; Irvine, the engineer; and Bright, the fireman. At the time of the accident they were engaged in moving and placing four railroad cars. The tracks involved are the main track, side track and straight track. The engine was headed east and was moving backwards and westward; Steele was going westward, on the southern side of the track. As the train moved backwards, one of the four cars was "kicked" and run on a side track, and the other cars Steele directed to be run west of the crossing on what is known as the straight track, which is next to, north of, and parallel with the main track.

The alleged defective crossing is a public crossing through the West Waynesboro railroad yard, and is made of boards sixteen feet long laid parallel with the rails, the boards and the top of the rails being on a level. The boards used in the construction of the crossing were four inches thick and were beveled, or adzed, at the ends.

It is shown by the plaintiff's evidence that boards one inch thick had been placed on the crossing next

to the ends of the ties on the south side of straight track; that these boards were not beveled or adzed, and were left in such a condition as to make the crossing dangerous to one walking along the track.

As the train was backing toward the crossing, Steele was on the main track, east of the crossing a short distance. Cooke was riding on the head of the lead car, but left this position in order to shut a derail switch situated west of the crossing. From this point, the evidence of the plaintiff and the defendant is in conflict. It is the contention of the plaintiff that the evidence shows that it was a rule of the defendant that a trainman had to ride on the head of the lead car while the train was backing; that when Cook got off of the lead car, Steele, endeavoring to comply with this rule, ran along the south side of the track, as was the custom, expecting to board the car. As he ran along, the car caught up with him at the east side of the crossing; he caught the rear handles and attempted to put his foot into the ladder, and at the moment he made this movement, his foot caught under the end of the crossing boards and he was held fast; that the forward movement of the train jerked his foot loose; that he lost his balance and was hurled between the rails in front of the backward moving train, and while under same was fatally injured.

There was a verdict for the plaintiff which the court refused to disturb.

It is assigned as error that the trial court erred in giving certain instructions to the jury on the motion of the plaintiff; in refusing to give a certain instruction on the motion of the defendant, and in refusing to set aside the verdict of the jury.

[1] As stated, the right of recovery is based upon three alleged acts of negligence. It must be conceded

that if there was any one ground of negligence sustained by the proof, and the jury have been correctly instructed, the plaintiff was entitled to recover such damages as might be ascertained by the jury within the limit prescribed by law, unless prevented from so doing by some rule of law, or some act or default upon the part of her intestate.

In view of the conclusion reached, we do not deem it necessary to a decision of the case to discuss the alleged defective condition of the crossing, or the question of assumption of risk, or the instructions given or refused, relating to these questions.

On motion of the plaintiff the following instructions were given:

"The court instructs the jury that it was the duty of the defendant company to exercise reasonable care in the movement of its train, and if the jury believe from the evidence that the plaintiff's intestate, while in the performance of his duties, caught his foot under a board of the crossing in the notice mentioned, and fell or was thrown in front of the defendant's train that was moving backwards, then it became and was the duty of the engineer, if he saw and knew the danger that the plaintiff's intestate was in, to do all that he could to avoid injuring the deceased, and if the jury believe that he failed to do this and injured and caused the death of the plaintiff's intestate, then the jury ought to find a verdict for the plaintiff."

"If the jury believe from the evidence that the plaintiff's intestate was engaged in work a short distance east of the crossing in the notice mentioned, and that, as the engine with three cars attached thereto backed toward the crossing, he ran alongside of the end car and grabbed the handholds for the purpose of getting upon it; that as he was endeavoring to get

upon said car his foot caught under one of the planks of the crossing which the defendant had negligently permitted to stick up above the ground, and that he was thereby thrown or jerked in front of said car and pushed or dragged to and beyond the west end of the crossing; that the engineer in charge of the engine saw the plaintiff's intestate when he fell, or was thrown or dragged in front of said car, and stopped the engine and cars when the plaintiff's intestate had been dragged or pushed beyond the west end of the crossing; that the plaintiff's intestate at this time was caught under the car, but had not received serious injuries; that after the said engineer had stopped the engine and cars and while one of the employees of the defendant was endeavoring to assist the plaintiff's intestate to get out from under the car, the said engineer negligently reversed his engine and caused the said car to move in the opposite direction from that in which it was running when the plaintiff's intestate fell, and dragged and rolled the plaintiff's intestate back upon the crossing for a distance of eight feet or more, and ran over and caused the injuries which resulted in his death, then the plaintiff is entitled to recover a verdict in this case."

The defendant offered the following instruction, which was refused:

"The court instructs the jury that there is no evidence in this case upon which they may find that engineer Irvine was negligent in handling his engine at the time of the accident to C. H. Steele, and in this suit the defendant cannot be held liable to the plaintiff because of any movement of the car, even though the jury may believe from the evidence that the car moved forward or to the east after its westward movement stopped and while C. H. Steele was under the car."

[2] This brings us to a consideration of the proof relied on by the plaintiff to sustain the rule of law contained in these instructions. That Steele was not seriously hurt when the westward movement of the train ceased, we think is conclusively shown. The injury to him occurred when the train moved eastward, dragging him along the track for a distance of some six or eight feet.

It is the contention of the defendant that the engine was not moved eastward, or that, if it was so moved, such movement was due to the rebound of the train. Evidence was introduced to sustain this contention.

On the other hand, plaintiff introduced evidence to show that after the train had carried Steele westward for some distance and had then come to a stop, the engine was reversed, which caused it to move eastward, and that it was this eastward movement which caused Steele's death.

The jury heard the evidence on the two theories and found for the plaintiff. The rule is too well settled to need more than a suggestion that the verdict of the jury on this point is conclusive, if there is evidence upon which to base the verdict.

The engineer testified that he knew Steele was under the car. That he was under there a sufficient period of time before he was injured to enable Cook, who was on the north side of the car, to walk, or run, from there to the south side and endeavor to give Steele assistance, clearly appears. It also appears that Steele stated, just after he was taken from under the car: "Oh, if you hadn't run forward I would have been all right."

We think the evidence sufficient to sustain the conclusion of the jury. It follows, therefore, that if there is no error in the granting and refusing of the instructions, *supra*, the verdict of the jury should stand.

The objections urged against instruction No. 1 are set forth in the petition as follows: "(1) As an abstract rule of law, it was the defendant's duty to use ordinary care for the safety of its employee, Steele. It was not obliged, under the law, to do all possible, but only what it could do, in the exercise of ordinary care, proportionate to the emergency then existing; (2) the instruction is so general in terms as to invite the jury to speculation and surmise; to search for some possible means of stopping the train other than merely cutting off steam, applying brakes and reversing the engine, not suggested by the evidence but intimated by the instruction; (3) there was no evidence upon which to base the instruction; (4) that it is ambiguous."

[3] We do not think the instruction amenable to the objections urged. Under the circumstances, it was incumbent upon the engineer to "do all that he could to avoid injuring him (Steele)." This could only mean the exercise of ordinary care. Ordinary care, in this instance, was to let the engine remain stationary. This the engineer did not do, according to plaintiff's evidence.

[4] This case is not to be ruled by the doctrine applicable to the case of a trespasser or licensee injured while upon a railroad track. We think, with full knowledge of its employee's peril, brought about by no fault of his, that the defendant owed him a higher duty than it would have owed a trespasser or a licensee.

[5] The duty required of an engineer in ordinary cases is laid down in 2 Shearman and Redfield on Negligence (5th ed.), section 483, thus: "A locomotive engineer, or motorman, after becoming aware of the presence of any person on, or dangerously near, the track, however imprudently or wrongfully, is

bound to use as much care to avoid injury to him as he ought to use in favor of one lawfully and properly upon the track; that is to say, ordinary care with respect to anticipated injury before it becomes imminent; and the utmost care and diligence of which he is personally capable after he knows that it is imminent. This rule applies to all cases, even of the most outrageous negligence on the part of the person on the track."

In *Seaboard, etc., R. Co.* v. *Joyner*, 92 Va. 360, 23 S. E. 775, Judge Keith, considering an instruction dealing with the duty owed a trespasser, said: "But suppose that the broad interpretation be given the words, 'could have been prevented,' and that they are to be understood as telling the jury that it was the duty of the defendant to avoid running upon and over a human being trespassing on the track of the defendant company, if, after the discovery of his position of peril, it were possible to do so, by resorting to all the means within its power consistent with its duty to passengers and the train under its immediate protection, would that be erroneous? We think not, under the facts of this case."

If this principle may be invoked in favor of a trespasser, then it should apply with even greater force to an employee.

The second instruction, while setting out the facts upon which it is based, is but an amplification of the principle contended for in the first instruction as to the duty of the engineer after the discovery of Steele's peril. Even though it be conceded that the instruction did not fully state the facts in regard to the condition of the crossing and the assumption of risk, this would not afford a ground for reversal under the circumstances of this case.

[6] The last question to be considered arises upon

the refusal of the court to give the instruction asked for by the defendant. This instruction told the jury there was no evidence upon which they could find the engineer guilty of negligence, and that, as a matter of law, the plaintiff was not entitled to recover.

Without prolonging this opinion by setting forth the evidence in further detail, we think the trial court was right in refusing the instruction, both as to the evidence and as to the law.

We are of the opinion that the judgment of the circuit court is without error, and should be affirmed.

*Affirmed.*