# Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY v. JOHN J. MACE, ADMINISTRATOR, ETC.

November 15, 1928.

Absent, Chichester, J.

The opinion states the case.

*Kerr & Churchman*, for the plaintiff in error.

*Curry & Carter* and *Taylor & Taylor*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action by motion brought to recover damages arising out of the death of Theodore Mace in a crossing accident at Harriston, Augusta county, Virginia, October 17, 1927.

Designating the parties as they were designated in the trial court, plaintiff's intestate, a boy between fourteen and fifteen years old, together with his father, was killed by the front engine of a north bound double header freight train at this crossing. What is known in the record as Payne's Run road is a county road, which, roughly speaking, runs north and south and parallels the defendant's right of way for some dis-

tance to the south. That road comes into what is known as the Black Rock road about thirty feet east of this crossing, almost at right angles, merges into that road and crosses the railway track at right angles. It descends to the point of merger on a grade of eight per cent and less from a point which at its highest is from twenty-five to thirty feet above the track. It was raining. Mace and his father were in a truck, the curtains of which were closed. They came down this Payne's Run road going north, turned to the left to the west and were killed. The train which struck them carried fifty cars. South of the crossing the railroad looking to the north curves to the right and so the engineers of both locomotives, who sit on the right hand side of their cabs, had each a clear view of it, obstructed only by the shoulder of the hill down which the Payne's Run road came. The railroad itself ran in a cut through that obstructing hill.

The evidence of these two engine drivers is that the truck came into view when the front engine was ninety or a hundred feet from the crossing, and they estimate that the truck was then somewhere between fifteen and thirty feet from that point.

For the plaintiff it is contended that the physical facts demonstrate that these witnesses are mistaken in this, and that they saw, or should have seen, the truck sooner. It is difficult from the record to reach any certain conclusion as to this. If we adopt the defendant's estimate, it was traveling at the rate of seven or eight miles an hour, for the train was running thirty or thirty-five miles an hour, and struck it just as it had come upon the roadbed, and as its front wheels had reached the western rail.

The engineer of the front engine is charged with control of the train and his evidence is that he recog-

nized that the truck was not going to stop as soon as he saw it. He immediately applied the emergency brake and sanded the track to make this braking more effective. The engineer of the second engine was also charged with the duty of keeping a lookout, and saw the truck at the same time that the first engineer saw it. He too must have recognized that it was not going to stop. He did nothing.

In the bill of particulars filed with the notice of motion, two distinct acts of negligence are charged. It is said that the signals of approach required by section 3958 of the Code were not given, and that after Mace's peril was discovered the defendant failed to take proper steps to avoid the accident. In other words, the doctrine of the last clear chance is invoked.

While it is not conceded, Mace's negligence is not seriously questioned, and so also it is practically admitted that there is sufficient evidence to justify the jury in finding that the statutory crossing signals were not given. The weight to be given to evidence of witnesses who did not hear them is exhaustively and satisfactorily discussed by Chief Justice Prentis in *White* v. *Southern Ry. Co., ante* page 302, 144 S. E. 424, decided by this court at its September term 1928, and we desire to add nothing to what was there said on the subject, but will deal with this case upon the theory that there was ample evidence to warrant the jury's finding in this particular, as there was.

Section 3959 of the Code has frequently been the subject of construction. The Special Court of Appeals, in *Gregory* v. *S. A. L. Ry. Co.,* 142 Va. 750, 128 S. E. 272; *Norfolk Southern R. Co.* v. *Banks,* 141 Va. 715, 126 S. E. 662, and *Etheridge* v. *Norfolk Southern R. Co.,* 143 Va. 789, 129 S. E. 680, following the opinion of Judge Keith in *Simons* v. *Southern Ry. Co.,* 96 Va.

152, 31 S. E. 7, was of opinion that something more was necessary than proof of failure of the railway company to give the statutory signals and proof of injury to the plaintiff, and that it was still necessary to show some causal connection between his injury and the defendant's dereliction. In short, it was of the opinion that the statute did nothing but to bring into cases of this character the doctrine of comparative negligence.

This matter again came before this court in *Southern Ry. Co.* v. *Johnson, ante,* page 345, 143 S. E. 887, and it was there held, in harmony with the views of Judge Buchanan in *Atlantic & D. Ry. Co.* v. *Reiger,* 95 Va. 426, 28 S. E. 593, that whenever signals of approach are not given at a crossing and there is an accident, a recovery may be had unless it affirmatively appears from the evidence or from the physical facts that there was no causal connection between them. This is now settled law in this State.

There were, as we have seen, two theories relied upon by the plaintiff for recovery. If the jury was improperly instructed as to either of them, such error would be prejudicial, for the court could not say upon which theory the verdict stood. *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486. In the instant case, it may have thought that the crossing signals were given, and yet have returned a verdict for the plaintiff because it was of opinion that the defendant has failed, after his peril was discovered, to give to him fair chance to escape. Hence the necessity for proper instructions.

The first to which objection is taken is this: "The court instructs the jury that if they believe from the evidence in this case that the approach to the crossing where Theodore Mace was killed was extra dangerous, then it was the duty of the defendant to exercise extra

care to prevent injury to persons on or about to cross over the crossing, that is to protect travelers on the county road against approaching trains, and as to whether such care was used or adopted by the defendant's servants in the case now on trial, is a question for the jury to determine."

It is said that this instruction imposes an unreasonable burden upon the railway which is charged with exercising ordinary and not extra care. Of course, ordinary care is all that the law demands unless the situation is one of imminent peril (*Chesapeake & O. Ry. Co. v. Steele's Adm'x*, 146 Va. 22, 135 S. E. 677), but "ordinary care" is itself a term of varied significance. Ordinary care in one set of circumstances might be gross negligence in another.

"The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court." *Grand Trunk R. Co. of Canada v. Ives*, 144 U. S. 408, 417, 12 S. Ct. 679, 683 (36 L. Ed. 485); Elliott on Railroads (2d ed.), section 1649. Ordinary care in an African jungle would be fantastic caution in an English park.

The Harrison crossing was a dangerous one. Defendant in its petition for a writ of error charges that it was. All that this instruction told the jury was that if it was extra dangerous, extra care should be used. It amounted to no more than a statement to the effect that extra vigilance in such circumstances was but ordinary care. After all the distinction in such a case

is but a play upon words. An instruction of like import was sustained in *Kimball & Fink* v. *Friend's Adm'r* 95 Va. 125, 27 S. E. 901.

Complaint is made of plaintiff's instruction No. 6, which is: "The court instructs the jury that if they believe from the evidence in this case that the defendant's servants in charge of its engines saw, or ought to have seen, by the exercise of reasonable care, that the truck in which Theodore Mace was riding was approaching the crossing in front of the train, apparently as if the driver was unconscious of the danger, then it was the duty of the servants of the defendant company to use all the means in their power to do everything that could be reasonably done, under the circumstances, to avoid the mischief complained of here; and if the jury believe from the evidence that the defendant was negligent in this case, and that such negligence was the proximate cause of the death of Theodore Mace, then they must find a verdict for the plaintiff."

It is not contended that the statements of law here made are, as abstract propositions, unsound, but rather that they are inapplicable and confusing in that they are not supported by the evidence.

Independent of antecedent negligence, a high degree of care and diligence is required of the defendant when the plaintiff's peril is patent and imminent, but this does not mean that impossible perfection is to be expected. The measure of conduct and of care required in emergencies has been given us by two eminent judges, who have presided over this court.

Keith, P., in *Norfolk Southern R. Co.* v. *White's Adm'x*, 117 Va. 342, 343, 84 S. E. 646, 647, said: "If the minds, nerves and muscles of men were so accurately co-ordinated that there could be instantaneous action to meet an emergency, there would perhaps be merit in this case. * * *

"It is not a case for the application of the doctrine of the last clear chance because the act of negligence upon the part of White and that upon the part of the railroad company, if negligence there was upon its part, are so closely connected in point of time as not to have afforded the employees of the railroad company a plain opportunity to avoid inflicting the injury for which this suit is brought."

In *Chesapeake & Western Ry. Co.* v. *Shiflett's Adm'x*, 118 Va. 63, 70, 86 S. E. 860, 862, is this comment by Judge Kelly: "It is clear that the mental and physical faculties of the other men would have had to act with more than human precision, and with the quickness of electricity, to utilize the scant time and distance thus remaining in saving this man from the wholly unexpected and unlikely emergency which his inexplicable conduct had precipitated. If they had succeeded, it would have been by the merest chance. The law does not impose liability under such circumstances." See also *Van Sickler* v. *Wash. & O. D. Ry.*, 142 Va. 857, 128 S. E. 367.

The rule is thus stated in the late case of *McGowan* v. *Tayman*, 144 Va. 358, 132 S. E. 316: "Where a person, without fault on his part, is placed in sudden peril or sudden emergency, he is required to exercise such ordinary care as a person of ordinary care and prudence be expected to exercise if confronted with the same sudden emergency or peril.

This is an illustration of the limitations of language. In such circumstances, this mythical composite ordinary man could not be expected to do any particular thing. He might do one of many things. The most that can be said is that whatever was done should manifest a fair degree of reason in his efforts to avoid an accident. Here he applied the emergency

brake and sanded the track that this braking might be the more effective. It may have been, and doubtless was, a futile gesture, and but an involuntary and reflex action in an effort to stop. Another man of as good or better judgment might have sounded the alarm, but it was not possible for him to have done all of these things. Had the second plan been adopted, and had death still followed, we and the jury would probably have been told that this engineer did not even make an effort to stop his train, that he manifested a disregard of Mace's peril which amounted to heartlessness. We see nothing to criticize in what was done. If he did not do what some other man of good judgment would have done, he did what that man might well have done. If the conduct of this servant alone was under review, this instruction would be erroneous as not sustained by the evidence; but he is not the only servant upon whom responsibilities rested.

 The situation changes when we come to consider the conduct of the second engineer. He, too, was required to keep a lookout. He knew of the crossing; he knew that it was quite a dangerous one, and that it was his duty to so place himself as to make that lookout effective. The curving track gave him an unobstructed view. When ninety or one hundred feet away, he saw the truck and he must have seen what the first engineer saw and that witness saw at once that it was not going to stop. The truck was then by his evidence from fifteen to thirty feet from the roadbed. He was not in charge of the train. It was not his duty to apply the brakes, and there was nothing left for him to do except to sound the alarm. Apparently dazed by the imminence of the disaster, he sat spellbound and did nothing.

In *Washington & O. D. Ry.* v. *Thompson*, 136 Va. 597, 603, 118 S. E. 76, 78, the court said: "It should and must be emphasized that a plaintiff is not entitled to recover under this doctrine upon a mere peradventure. He. has no right to hold the defendant liable merely upon showing that perhaps, if the defendant's agents had responded properly, promptly, instantaneously, he might have been saved. The burden is on him to show affirmatively by a preponderance of the evidence which convinces the average mind, that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of doing so."

The burden is undoubtedly upon the plaintiff to prove that the defendant had a clear chance to avoid the accident. Indeed, the rule relied upon is defined as that of the *last clear chance*. It is the court's duty to so instruct. The chance must be clear, but after they have been instructed, it is for the jury, within certain well recognized limits, to say if the evidence measures up to the necessary requirements, and the verdict comes to us under rules likewise definitely established.

"It was for the jury to say, under all the evidence and proper instructions (taking into consideration the time within which the motorman had to act, and all the surrounding circumstances and conditions), whether he could have avoided killing Van Sickler and failed to do so." *Van Sickler* v. *Wash. & O. D. Ry.*, 142 Va. 857, 128 S. E. 367.

Here we have not only the jury's verdict, but its approval by the trial court. We cannot say from the evidence that the truck driver, had he been promptly apprised of his peril, could not have stopped, and that

he did not have a still fairer chance to turn aside. The road was amply wide. Applying this instruction to the evidence relative to this engineer, it is sufficiently supported.

Defendant also contends that there is nothing in the pleadings which charged this crew with negligence. It is true that from the motion and from the bill of particulars one would infer that there was only one engine, but evidence that there were two and evidence as to the rights, duties and conduct of each was heard without objection. Had any been made, amendments to conform the pleadings to the facts would doubtless have been permitted. It is too late for the first time to raise this question in this court. *Thompson* v. *Artrip*, 131 Va. 347, 108 S. E. 850, and *Lockard* v. *Whitenack*, *ante*, page 143, 144 S. E. 606, (decided by this court September 20, 1928).

Instruction ·No. 7 varies from instruction No. 6, just considered, only in that it stresses the duty of these engineers to keep a lookout. We find in it no error.

This is the instruction "N" tendered on behalf of the defendant and refused: "The court instructs the jury that they shall disregard any charge of negligence in the plaintiff's notice of motion as to the alleged failure of the defendant to keep a proper lookout and to fail to stop its train in time to have averted the accident, since such charges are without evidence to support them."

If the conclusions which we have heretofore reached are sound the rejection of this instruction was, of course, proper.

· The evidence relied upon to sustain the verdict has, in its essential particulars, been already noted. We are of opinion that it is sufficient.

By way of recapitulation, it may be stated:

1. There is no error in the instructions.

2. The engineer in charge of the first locomotive was guilty of no negligence at the moment of the accident. He may have failed to sound the crossing signals. If so, that was negligence.

3. The evidence relative to the second engineer's conduct at the moment of the accident is sufficient to sustain the jury's finding that he was negligent, although the jury may, in fact, have been of opinion that he was not negligent at all and have based its verdict upon the failure of the statutory signals of approach. We cannot say with certainty, but a review of the evidence leads us to believe that this was probably its process of reasoning.

It follows from what has been said that the judgment must be affirmed, and it is so ordered.

*Affirmed.*